**WOODBURY CHEMICAL COMPANY,**
**now Missouri Chemical Company,**
**Appellant,**

**v.**

**Don HOLGERSON, d/b/a Tri County AG**
**Service, Appellee.**

**No. 292–70.**

United States Court of Appeals,
Tenth Circuit.

March 22, 1971.

Tom H. Barratt, Laramie, Wyo. (Earl L. Williams, Jr., Laramie, Wyo., with him on the brief), for appellant.

Robert W. Costin, Laramie, Wyo., for appellee.

Before HILL, SETH and HOLLO-WAY, Circuit Judges.

SETH, Circuit Judge.

This action was commenced by an aerial applicator of herbicides to recover damages from a chemical company which furnished a product to be used to spray ranchlands which he alleged was ineffective to accomplish the results represented by the company. The case was tried to the United States District Court for the District of Wyoming. The court entered judgment for plaintiff for damages in an amount representing the cost plaintiff would incur in respraying the area. The case was and is basically one of fact.

In June 1968 plaintiff entered into contracts with several Wyoming ranchers to control or eradicate sagebrush by the application of a weed killer. The federal government participated with the ranchers in the spraying program by bearing some of the expense. Federal specifications set forth the degree of effectiveness to be attained under the contracts. This was a sixty per cent kill of black sagebrush and eighty per cent kill of all other varieties. Payment of the government share was conditioned on respraying if the effectiveness of the initial spraying did not meet the required percentages.

The plaintiff ordered and used 1,840 gallons of defendant's product, spraying 5,520 acres of sagebrush under the contracts referred to above in June and July 1968. It is undisputed that the spraying was ineffective, achieving about a forty per cent kill on all sagebrush.

There was conflicting testimony on virtually every question of fact. Defendant denied that its agents made any representations. Plaintiff's expert witness was met by defendant's expert. Defendant questioned plaintiff's mixing of the chemicals. Furthermore defendant stressed a disclaimer which appeared on each container, which stated: "Non-Warranty: Seller makes no warranty of any kind, express or implied, concerning the use of this product. Buyer assumes all risk in use or handling, whether in accordance with directions or not."

Plaintiff, on the other hand, relied heavily on the label guarantee with respect to chemical content and emulsifiability.

In rendering judgment for the appellee, the trial court concluded that appellant breached an implied warranty of fitness for a particular purpose. Furthermore the appellant was held to have breached two express warranties: the guarantee of composition on the label, and the representations of effectiveness made by appellant's agents. In its findings of fact, the trial court found that various representations were made by appellant's agent concerning the effectiveness of this product, i.e., that it would accomplish an eighty per cent kill. The court further found that such representations were part of the basis of the bargain. As to the warranty of composition on the label, the trial court found that the product did not conform to the claims of the label. The court also found that the appellee was obligated to respray the 5,520 acres. From our examination of the record we conclude that these findings of fact are supported by the evidence; they are not clearly erroneous and will not be disturbed on appeal.

■ Appellee's theory of liability in this action is that appellant breached various express and implied warranties. The initial argument raised by appellant in this appeal is that there was no consideration given for any warranties. All of the authorities cited by appellant concern situations in which the alleged warranty did not come into existence at the time of the sale. In our case the warranties in question arose with the sale; they were contained in the salesman's statements prior to placing the order. The evidence clearly indicates that the parties had entered into a binding agreement for the sale of certain chemicals and there was consideration given in the form of appellee's promise to pay. This is sufficient. All of the warranties in question arose at the time of sale and were therefore supported by the consideration of the sale. Jackson v. Baldwin-Lima-Hamilton Corp., 252 F.Supp.

529 (E.D.Pa. 1966); 77 C.J.S. Sales § 306. The promise to pay was sufficient consideration although the court found that appellee need not make the payment because the product was ineffective to accomplish the intended results.

■ As to the warranty issue the record shows that there was conflicting testimony concerning meetings and the substance of conversations between appellee and agents or salesmen of the appellant. Appellee testified in substance that he was guaranteed an eighty per cent kill by appellant's salesmen and representatives by the use of appellant's product. Appellee alleged that as a result of the representations of appellant's agents, he placed an order through them for appellant's No. 6 Butyl Ester 2,4–D, emulsifiable concentrate, which he used in the spraying which proved ineffective. The record shows that one of appellant's agents saw a copy of one of the spraying contracts which specified the degree of effectiveness required. There was also testimony that another agent spent two days with appellee at a meeting concerning sagebrush spraying and made statements as to the eighty per cent effectiveness of appellant's product. The record clearly supports the finding that appellant's agents knew the effectiveness required.

The warranties and knowledge considered above refer to the period before the product was ordered, and which the findings show was the basis for the order by appellee. When the containers arrived the labels represented that the product contained a certain quantity of the active chemical.

■■ Appellee had retained some of the product used, and this was tested by the Wyoming State Laboratory. The State analyst concluded the product did not conform to the guarantee on the label in that it did not contain the specified percentage of 2,4–D and it was not emulsifiable as the label had guaranteed. Appellant also had the product tested, using a sample taken from one of the batches purchased by appellee. Their

expert testified that the product did meet the specifications of the guarantee. The trial court, in its findings of fact, accepted the testimony of appellee's expert. This finding, as indicated, is supported by the record. There was testimony that non-compliance with the stated chemical content would decrease effectiveness. The finding that such non-compliance proximately caused appellee's damage will not be disturbed.

Also relating to the representations on the label is the matter of whether the chemical should have been mixed with water as the label directed or with diesel fuel as was done by appellee. The label also directed that the local agricultural adviser be consulted. This adviser recommended the mixing of sprays of this type with diesel fuel. Thus these label directions pretty well cancelled out each other. However, there was adequate evidence as to the effectiveness of the mixture with diesel fuel and that its use was preferred, and testimony as to the quality of diesel fuel used to support the trial court's findings.

■ Apart from challenging the sufficiency of the evidence, appellant urges that its non-warranty statement on the label should preclude recovery. Appellant does not contend, however, that this non-warranty effectively disclaims any liability for failure of the product to meet the specifications as to chemical content. Since the trial court specifically found that the product did not meet such specifications, and since that finding is supported by the evidence, it is not necessary to consider the effect of the non-warranty. Appellee could recover on any one of the alleged warranties. It is not necessary for us to consider the merits of each separate theory. We have concluded that the trial court did not err in finding a breach of the express warranty on the label. It is not contended that a breach of that express warranty is not sufficient ground for recovery if that breach was the proximate cause of appellee's damage. The question of proximate cause was, again, a question of fact resolved by the trial court.

■ Finally, appellant argues that appellee failed to prove that he was liable to respray the acreage in question, and the damage award should not have been computed on the basis of respraying. It is contended that the trial court should have specifically found that an alleged indemnity provision in the spraying contracts did not relieve appellee for unsatisfactory results. The contracts between appellee and the various ranchers all contained the following two provisions:

"Buyer understands and agrees that any chemical or material used in this service has been specified by Buyer as to kind, composition and quantity, and shall not hold the Company liable for unsatisfactory results or damage of any kind to Buyer's property."
and:

"Company further agrees that it guarantees an 80% kill to be evaluated one year from the date of application."

Neither of those provisions specifically mentions respraying. The trial court's conclusion that appellee was contractually obligated to respray 5,520 acres could not, therefore, be based solely on the express contract provisions. There was testimony concerning the business of aerial spraying. From that testimony it is clear that respraying is the normal procedure when an applicator fails to get an effective kill. There is no doubt from the record that the appellee will either respray the areas in question or he will be out of business. Whether or not appellee is liable to respray is a question which goes to the measure of damages. It was not necessary for the trial court to find the obligation to respray in the express terms of the contracts; such obligation was amply proved by all the testimony concerning the accepted practice in this business.

Affirmed.