670 P.2d 871

NEZPERCE STORAGE CO., an Idaho corporation; Henry A. Baune and Isabelle Baune, husband and wife; Chuck Brackett, Jr., and Wanda Brackett, husband and wife; Donald Hamilton and Maxine Hamilton, husband and wife; S.A. Lauby and Edna Lauby, husband and wife; Howard Hess and June Hess, husband and wife; Ray Mar Assoc., Inc., an Idaho corporation; Gary Doggett and Dina Doggett, husband and wife; and Robert Payne, Jr., dba Super Kat Farms; Don McLeod and LaMoyne McLeod, husband and wife; Scott McLeod and Barbara McLeod, husband and wife, dba McLeod Brothers, Plaintiffs-Respondents-Cross-Appellants,

v.

Joseph ZENNER and Dorothy Zenner, husband and wife, Defendants-Appellants-Cross-Respondents.

No. 13680.

Supreme Court of Idaho.

Sept. 30, 1983.

. John H. Bengtson, of Randall, Bengtson, Cox & Risley and Manderson L. Miles, of Knowlton and Miles, Lewiston, for defendants-appellants-cross-respondents.

Jerry V. Smith and Ned A. Cannon, Lewiston, for plaintiffs-respondents-cross-appellants.

SHEPARD, Justice.

This is an appeal from a judgment in favor of plaintiff Nezperce Storage Co. in an action for breach of warranty arising from the sale of wheat seed by defendants Zenner. We affirm.

The Zenners are wheat farmers in the Camas Prairie Area, which comprises parts of the counties of Lewis and Idaho. Normally, most of the wheat grown in the area is winter wheat, which is planted in the fall season and requires several weeks of freezing weather prior to reaching crop maturity. Hence, winter wheat planted in the spring will not produce a crop. On the other hand, spring wheat does not require a period of freezing weather to produce a crop and should be planted in the spring. The seed for winter wheat cannot be visually distinguished from spring wheat seed.

The kernels of spring wheat may be distinguished from those of winter wheat by means of a "grow-out" test. In the case of the spring-winter wheat test, some considerable time must elapse and the plants

must develop to a certain stage so that the distinction between the two types of wheat can be made. An electrofloresis test is an effective and timely method of determining the spring-winter wheat types, but conflicting evidence was presented at trial as to the availability of that laboratory type-testing.

In the fall of 1974, Zenner planted winter wheat on most of his land, but in the spring of 1975, he planted some of his acreage to a new variety of spring wheat known as MP-1. The winter wheat was harvested in August 1975 and placed in storage bins on his farm. Approximately a week thereafter, he harvested the spring wheat acreage and, according to his testimony, placed that wheat in a different storage bin on his farm.

The weather on the Camas Prairie during the winter of 1975–76 was severe and much of the winter wheat crop which had been planted the previous fall suffered winter kill. Hence, in the spring of 1976, there was a substantial demand for spring wheat seed to be planted that spring to replace the winter wheat which had been killed during the winter. It appears that a shortage of spring wheat seed developed and that Zenner was aware of that shortage.

Wheat which is to be used for seed (as contrasted with wheat to be processed for food purposes) must be cleaned and treated. In March 1976, Zenner delivered 1,000 bushels of wheat to Nezperce Storage for cleaning and treating as seed. Some time later, Nezperce agreed to purchase that 1,000 bushels of wheat, together with an additional 1,000 bushels yet undelivered. Zenner understood that Nezperce was purchasing his wheat to meet the shortage of spring wheat seed in the Camas Prairie area.

Nezperce cleaned, processed and bagged the seed and did nothing to alter its variety or mix it with another variety. Nezperce performed a "germination" test to determine if the seed would grow properly, which test was successful. Nezperce did not conduct a "grow-out" test and did not submit the seed for electrofloresis testing to determine if it was in fact spring wheat

seed; as noted above, the evidence was conflicting as to whether either test was both available and practical.

Thereafter, Nezperce sold a portion of the Zenner seed to eight farmers. Some six weeks after planting, it became obvious that some of the plants grown from the seed were not maturing and that the seed had been a mixture of spring and winter wheat. Those crop losses suffered by the eight farmers in terms of lost yields totalled approximately $84,000.

This action was instituted in 1977 by Nezperce against the Zenners essentially alleging breach of both express and implied warranty by delivering wheat which was not MP-1 spring wheat. Following trial, the jury returned special interrogatories upon which the court issued findings of fact and conclusions of law and judgment for Nezperce. The findings and conclusions of the trial court included: that Joseph Zenner had made and breached express warranties that the wheat sold was MP-1; that he was a "merchant" under I.C. § 28-2-104, and that he made and breached an implied warranty of merchantability; that Joseph Zenner was given notice within a reasonable time of the failure of the seed to mature normally as spring wheat; that Nezperce's settlement with its customers was reasonable and that Nezperce had a right of indemnity against the Zenners for the amount of that settlement; and that the damages sustained by Nezperce were proximately caused by the Zenners' breaches of warranties.

Although many of the allegations of the Nezperce complaint and the Zenners' counterclaim were disputed at trial, the essential arguments upon this appeal are the Zenners' assertions of error relating to the findings of the jury that Joseph Zenner was aware of the shortage of spring wheat seed in the Camas Prairie area and that he knew or had reason to know that Nezperce was purchasing his wheat for processing into spring wheat seed for resale to its customers; that the award of consequential damages was improper and that Nezperce did

not reasonably mitigate its damages by testing the seed.

The propriety of awarding consequential damages in the instant case is governed by I.C. § 28–2–715(2)(a), which provides in pertinent part:

"(2) Consequential damages resulting from the seller's breach include

(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. . . ."

Clearly, Nezperce sustained a "loss" in reimbursing its customers for the damages they suffered by purchasing and planting seed which was not spring wheat. In a breach of warranty action, indemnification for this kind of a loss is proper when a seller such as Nezperce receives a warranty from a supplier such as Zenner and passes that warranty on to customers. *Hartwig Farms, Inc. v. Pacific Gamble Robinson*, 28 Wash.App. 539, 625 P.2d 171 (1981); *Agr. Services Ass'n, Inc. v. Ferry-Morse Seed Co.*, 551 F.2d 1057 (6th Cir.1977); *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977); *Klages v. General Ordnance Equipment Corp.*, 240 Pa.Super. 356, 367 A.2d 304 (1976); *see Herman v. General Irrigation Co.*, 247 N.W.2d 472 (N.D.1976); *Dobias v. Western Farmers Association*, 6 Wash.App. 194, 491 P.2d 1346 (1971).

■ As stated in *Clark v. International Harvester Co.*, 99 Idaho 326, 346, 581 P.2d 784, 804 (1978), "there are certain limitations on the right to recover consequential damages under § 28–2–715(2)(a). First, the losses must have resulted from needs which the seller knew or had reason to know at the time of contracting." Here the special interrogatories returned by the jury indicate that Zenner was aware of the shortage of spring wheat seed in the Camas Prairie area and that Zenner had reason to realize that "Nezperce Storage Company's purpose in purchasing MP–1 wheat was to meet an apparent shortage of spring wheat seed on the Camas Prairie," and that Zenner had reason to know that Nezperce was

buying the wheat from Zenner to process it into spring wheat seed for resale. Those findings are supported by substantial, albeit conflicting, evidence, and therefore they will not be disturbed on appeal. I.R.C.P. 52(a); *Ellis v. Northwest Fruit & Produce*, 103 Idaho 821, 654 P.2d 914 (1982); *Jolley v. Clay*, 103 Idaho 171, 646 P.2d 413 (1982); *Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982). Hence, the foreseeability requirement of I.C. § 28–2–715(2)(a) has been satisfied.

The propriety of an award of consequential damages must also satisfy the second condition of I.C. § 28–2–715(2)(a), *i.e.*, that they could not have been *reasonably* prevented by cover or otherwise. As to this condition, the Court in *Clark v. International Harvester Co.*, 99 Idaho 326, 347, 581 P.2d 784, 805 (1978), held that "the plaintiffs were only required to take reasonable efforts to mitigate their damages, [citation] and the burden of proving that the damages could have been minimized was on the defendants." In *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 528 (3rd Cir. 1978), it was held that, in an action to recover consequential damages under the same UCC provision, "[t]he requirement of . . . mitigation of damages is not an absolute, unyielding one, but is subject to the circumstances," and "[t]he test for plaintiff's efforts [to mitigate damages] is reasonableness . . . ." *Id.*, at n. 5. In the instant case the Zenners presented testimony attempting to convince the jury that Nezperce could have mitigated or avoided its consequential damages by subjecting the seed to tests to determine seed variety prior to the time it resold the seed to its customers. As indicated in *West v. Whitney-Fidalgo Seafoods, Inc.*, 628 P.2d 10 (Alaska 1981), and *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir. 1978), the question of whether Nezperce acted properly to mitigate its damages is a factual matter to be determined by the trier of the fact. Here the jury specifically found:

"it [was] reasonable for plaintiff Nezperce Storage to sell the seed it man-

ufactured from the Zenner wheat to its customers without doing any more than the facts show it did do to determine whether or not such seed was actually of a spring wheat variety."

That finding is supported by substantial, albeit conflicting, testimony and will not be disturbed on appeal. I.R.C.P. 52(a); *Ellis v. Northwest Fruit & Produce, supra; Jolley v. Clay, supra; Rueth v. State, supra.*

■ The Zenners argue that the finding of the jury should be disregarded because the jury was not properly instructed as to what a "reasonable man" would have done in that the court failed to give Zenners' submitted instructions regarding negligence per se. We disagree and find no error in the refusal of the trial court to give Zenners' requested instructions. In the instant case we need not decide whether negligence per se can ever be used to limit a party's consequential damages under I.C. § 28–2–715(2)(a). While a court may adopt the requirements of a legislative enactment as the standard of conduct of a reasonable man, *Brizendine v. Nampa Meridian Irrigation Dist.,* 97 Idaho 580, 548 P.2d 80 (1976), that doctrine is ordinarily applied in negligence actions where a plaintiff has suffered injury by a defendant who was in violation of a statute or ordinance. However,

"In order for the violation of a statute to be pertinent in a particular case, the statute must be ... designed to protect (1) the class of persons in which the plaintiff is included (2) against the type of harm which has in fact occurred as a result of its violation." *Kinney v. Smith,* 95 Idaho 328, 331, 508 P.2d 1234, 1237 (1973); *Anderson v. Blackfoot Livestock Commission Co.,* 85 Idaho 64, 375 P.2d 704 (1962); *Curoe v. Spokane Etc. R.R. Co.,* 32 Idaho 643, 186 P. 1101 (1920); *W. PROSSER, LAW OF TORTS* § 36 (4th ed. 1971).

The statute at issue, I.C. § 22–417(3), imposes penalties upon one who sells seeds which are incorrectly labeled when the person selling the seed "has failed to obtain an invoice or growers declaration giving kind, or kind and variety ... and to take such other precautions as may be necessary to insure the identity to be that stated." We deem it clear and obvious that, in the instant case, the statute was designed to protect the following class of persons: those customers who purchased the seed from Nezperce. Cases construing similar seed laws, *e.g., Agr. Services Ass'n, Inc. v. Ferry-Morse Seed Co., Inc.,* 551 F.2d 1057 (6th Cir.1977), and *Klein v. Asgrow Seed Co.,* 246 Cal.App.2d 87, 54 Cal.Rptr. 609 (1966), have so held. Equally clearly, the statute was not designed to provide protection to the Zenners, who can best be described as suppliers of mislabeled seed. Hence, we deem the statute and the doctrine of negligence per se in the instant case irrelevant. *See also S.J. Groves & Sons Co. v. Warner, supra,* which states:

"Where both the plaintiff and the defendant have had equal opportunity to reduce the damages by the same act and it is equally reasonable to expect the defendant to minimize damages, the defendant is in no position to contend that the plaintiff failed to mitigate. Nor will the award be reduced on account of damages the defendant could have avoided as easily as the plaintiff." At page 530; *See also Shea—S & M Ball v. Massman—Kiewit—Early,* 606 F.2d 1245 (D.C.Cir. 1979).

■ The Zenners also assert that they are not "merchants" as defined in I.C. § 28–2–104(1). However, even assuming their assertion is correct, such does not alter the result. Whether the Zenners were "merchants" is only relevant to the breach of implied warranties of merchantability under I.C. § 28–2–314. Here the jury specifically found that Zenners not only breached an implied warranty of merchantability, it also found that an *express warranty* had been given that the wheat was MP–1 spring wheat and that such express warranty had been breached. I.C. § 28–2–313(1) provides that express warranties are given by "sellers," and the Zenners are "sellers" within the purview of I.C. § 28–2–103(1)(d). Hence, the breach of the express warranty here provides a sufficient basis for the award of consequential damages

and we need not decide whether the breach of an implied warranty of merchantability will also support the award of consequential damages. *See Jensen v. Seigel Mobile Homes Group,* 105 Idaho 189, 668 P.2d 65 (1983); *see also G & H Land & Cattle Co. v. Heitzman & Nelson, Inc.,* 102 Idaho 204, 628 P.2d 1038 (1981) (judgment awarded under incorrect theory will not be reversed when same judgment would have been proper under correct theory).

The judgment of the district court is affirmed. Costs to respondents. No attorney fees allowed.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.