**AMERICAN ALLOY STEEL, INC., Appellant,**

**v.**

**ARMCO, INC., Appellee.**

**No. C14–88–411–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 24, 1989.

---

John Martin Klein, Dallas, for appellant.

Mark R. Read, Thomas B. Swanson, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant American Alloy bought steel plating from appellee Armco. When a subsequent buyer alleged that the steel plating was defective, American Alloy replaced it and sued Armco for reimbursement. In its suit, American Alloy alleged a claim for contribution and/or indemnity, breach of implied and express warranties of merchantability and a suit upon a sworn account. Armco filed a motion for summary judgment, which the trial court granted, and American Alloy appeals. We affirm the trial court's judgment.

On January 26, 1982, Armco shipped steel plating to American Alloy pursuant to an order. It was American Alloy's practice to keep steel plating in inventory pending resale to ultimate end users. American Alloy asserts that officials at Armco's Houston Works steel mill knew of this practice. American Alloy sold the plate purchased from Armco to Swecomex in February 1986 and shipped it in March, more than four years after the original sale. In June, Swecomex advised American Alloy of the discovery of certain defects in the plate that rendered it unusable for milling purposes. These defects allegedly could not be identified until after burning and milling and thus would not have been discoverable by American Alloy.

American Alloy replaced the plate sold to Swecomex and sought reimbursement from Armco. When Armco failed to satisfy the claim, American Alloy filed suit. Armco then filed a motion for summary judgment, to which American Alloy responded with a cross-motion for summary judgment. In its motion for summary judgment, Armco argued that the causes of action based on indemnity and breach of warranty were barred by limitations, that there was no cause of action for indemnity and that American Alloy's suit on a sworn account could not be pleaded as such. After reviewing the evidence and conducting a hearing on the amended motion, the trial court found that Armco was entitled to summary judgment on all issues.

American Alloy contests the summary judgment with nine points of error. We review these points, keeping in mind the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

In point of error one, American Alloy argues that the trial court erred in granting the motion for summary judgment because the cause of action for indemnity is not barred by limitations as a matter of law. American Alloy asserts that a contribution and/or indemnity cause of action does not accrue for limitations purposes until a judgment is rendered or a settlement reached on the underlying cause of action. Thus, American Alloy did not obtain a cause of action for indemnity against Armco until it settled with Swecomex one year prior to the filing of suit.

We do not take issue with American Alloy's limitations argument; however, we do question whether American Alloy has a cause of action for indemnity. (American Alloy appears to use the terms *contribution* and *indemnity* interchangeably; nonetheless, they are distinguishable, and we will refer to the cause of action as one for indemnity.) Indemnification in a general context is discussed thusly:

> Although a right of indemnification generally arises by express contract, the right also exists whenever the relation between several parties is such that either in law or in equity there exists an obligation on the part of one party to indemnify the other....

14 Tex.Jur.3d *Contribution and Indemnification* § 15 (1981). There is no contractual provision for indemnity in the case

before us. Therefore, we must determine whether the relationship between American Alloy and Armco is such that either in law or in equity, we may imply a right to indemnity on American Alloy's behalf. More specifically, does an implied obligation of indemnity arise out of the contractual relationship between the two companies?

There appear to be few cases, other than those arising out of a tort, that address this issue. Those cases that do recognize an implied right of indemnification do so on the basis of agency or surety principles. *See Mercedes–Benz of North America, Inc. v. Dickenson,* 720 S.W.2d 844, 857–58 (Tex.App.—Fort Worth 1986, no writ) (under general rules of agency, agent is entitled to indemnity when its liability arises from conduct performed for benefit and under direction of principal as a good faith execution of the agency relationship); *Lawyers Title Co. of Houston v. Authur,* 569 S.W.2d 578, 581 (Tex.Civ.App.—Waco 1978, no writ) (title company became indemnitor when employee assured defendant buyer that "everything necessary to the closing had been accomplished"); *Texas Constr. Associates, Inc. v. Balli,* 558 S.W.2d 513, 519–20 (Tex.Civ.App.—Corpus Christi 1977, no writ) (contractor and its surety entitled to indemnity against subcontractor for attorney's fee judgment because "without consideration, acted as guarantors of the obligations of Subcontractor to his suppliers"); *Felker v. Thomas,* 83 S.W.2d 1055 (Tex.Civ.App.—El Paso 1935, no writ) (accommodation signer of note, one who guarantees payment of note without consideration from obligor of note, allowed to recover on implied contract of indemnity against obligor upon default of note and subsequent judgment against accommodation signer for amount of note).

This case, however, involves neither an agency nor a surety relationship. American Alloy and Armco were parties to a contract with the freedom to negotiate its terms, keeping in mind their individual needs and circumstances. American Alloy states that its practice is to keep certain steel plating in inventory pending resale to end users. Therefore, it would be to the

company's benefit to negotiate a provision in the sales contract protecting itself against undiscoverable defects. It is clear that a buyer and a seller can freely negotiate to extend liability into the future. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 546 (Tex.1986).

In short, the relationship between American Alloy and Armco is not one that persuades us to imply a right to indemnity on American Alloy's behalf. As American Alloy has no cause of action for indemnity, we overrule point of error one, and we affirm the trial court's award of summary judgment on that issue.

■■■ Point of error three concerns American Alloy's breach of warranty claims. In its original petition, American Alloy alleged breach of an implied warranty of merchantability under TEX.BUS. & COM. CODE ANN. § 2.314 (Tex.UCC) (Vernon 1968). In an amended petition, the company added a claim for breach of an express warranty of merchantability. In moving for summary judgment, Armco argued that both causes of action, if they indeed existed, were barred by limitations under *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544 (Tex.1986).

In *Safeway*, the supreme court dealt with the issue of whether Certainteed's express and implied warranties explicitly extended to future performance under TEX. BUS. & COM.CODE ANN. § 2.725(b) (Tex.UCC) (Vernon 1968) so that Safeway's cause of action did not accrue until discovery of the breach. *Id.* at 545. Section 2.725(a) requires that an action for breach of any contract for sale be commenced within four years after the cause of action has accrued. Section 2.725(b) states that a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach, and that the breach occurs when tender of delivery is made. However, where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

The *Safeway* court determined that an implied warranty, including an implied warranty of merchantability, does not fall under the discovery exception because, by its very nature, it cannot explicitly extend to future performance. *Id.* at 547–48. The court further found that for an express warranty to meet the exception, it must make specific reference to a specific date in the future. *Id.* at 548. As Certainteed had represented that the roof it supplied to Safeway was "bondable up to 20 years," the court decided that a fact question existed as to whether Certainteed's express warranty extended to future performance and thus came under the discovery exception. *Id.*

Under the *Safeway* analysis, American Alloy's claim for breach of implied warranty of merchantability is barred by limitations. Similarly, its claim for breach of express warranty of merchantability is barred because the language that American Alloy claims creates an express warranty does not satisfy the *Safeway* requirement that an express warranty make specific reference to a specific date in the future.

On appeal, American Alloy urges this court to distinguish *Safeway* on several grounds. American Alloy argues that the plaintiff in that case was not left without a remedy nor did the case involve latent defects that were not discoverable until the product was actually put to use. However, to reiterate, parties to a contract can freely negotiate to extend liability into the future; that is why specific allowance was made in § 2.725(b) for warranties explicitly extending to future performance. *Safeway*, 710 S.W.2d at 546. American Alloy, not Armco, was responsible for protecting itself, particularly in light of its inventory practices.

■■■ American Alloy further argues that § 2.725 is unconstitutional insofar as it imposes an absolute statute of limitations that is not qualified by application of a discovery rule. This argument is premised on sections 3, 13 and 19 of Article I of the Texas Constitution and on the fourteenth amendment of the United States Constitu-

tion. However, for the reasons discussed in *Sax v. Votteler,* we address only section 13, the "open courts" provision. 648 S.W.2d 661, 664 (Tex.1983).

The constitutionality of § 2.725 under the open courts provision has been considered and sustained. *See Muss v. Mercedes–Benz of North America, Inc.,* 734 S.W.2d 155, 158–59 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). In that case, the court noted the supreme court's declaration in *Safeway* that "[a]doption of a uniform date of accrual and rejection of the discovery rule in warranty cases is a permissible means adopted by the state legislatures to protect commercial transactions." *Id.* at 159.

■ Finally, American Alloy urges this court to harmonize §§ 2.314, 2.607, 2.714 and 2.725 of the Texas UCC by construing *delivery* in § 2.725(b) to mean the date of delivery of goods to the end user. However, the purpose of a statute of limitations is to establish a point of repose and to terminate stale claims. *Safeway,* 710 S.W.2d at 545. When, as in this case, delivery to an end user occurs years after the original sale, this goal is frustrated. Point of error three is overruled.

■ American Alloy's point of error two is grouped with point of error one but is not addressed in the ensuing argument. Instead, it appears to be argued in tandem with point of error four. In point of error two, American Alloy argues that the trial court erred in granting summary judgment because the summary judgment evidence established an issue of fact regarding waiver of the statute of limitations by the express terms and conditions of the contract for sale. In point of error four, American Alloy asserts the trial court erred in granting summary judgment because the evidence established a question of fact regarding the existence of an express warranty of merchantability for which the limitations period was contractually waived.

The waiver argument is based on Paragraph 18 of a document entitled Conditions of Sale, which reads as follows:

WAIVER. Failure or inability of either party to enforce any right hereunder shall not waive any right in respect to any other or future rights or occurrences.

American Alloy asserts that the only reasonable interpretations that can be applied to this paragraph are that (1) the parties intended that the buyer be allowed to maintain a cause of action for breach of the warranty of merchantability despite lapse of the limitations period or (2) the parties intended that the buyer's indemnity claim survive, despite limitations being a bar to a direct cause of action for breach of warranty.

As a defense to a civil action, the statute of limitations is a personal privilege and may be waived by agreement either before or after expiration of the prescribed time limit. However, any agreement made before the statutory bar has fallen must be specific and for a reasonable time. A general agreement in advance to waive or not to plead the statute of limitations on a particular obligation is void as against public policy. 50 Tex.Jur.3d *Limitation of Actions* § 6 (1986); *see also Squyres v. Christian,* 253 S.W.2d 470, 472 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n.r.e.).

The waiver paragraph relied upon in this case does not even address limitations. Given the above guidelines, we cannot accept American Alloy's argument. Furthermore, even if an express warranty of merchantability is created by language in the Conditions of Sale document, it fails to meet the *Safeway* specificity requirement as discussed earlier. Points of error two and four are overruled, and the summary judgment is affirmed as to the breach of warranty issues.

■ In point of error five, American Alloy states that the trial court erred in granting the motion for summary judgment on the sworn account claim as it was properly pleaded. Rule 185 of the Texas Rules of Civil Procedure provides as follows:

When any action or defense is founded upon an open account or other claim for goods, wares and merchandise ... on which a systematic record has been kept,

and is supported by the affidavit of the party, his agent or attorney taken before some officer authorized to administer oaths, to the effect that such claim is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed, the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall file a written denial, under oath.

Rule 185 actions only alleging the sale of goods, wares and merchandise are limited to those instances whereby title to personal property passes from one party to another. *Land Liquidators of Texas, Inc. v. Houston Post Co.*, 630 S.W.2d 713, 714 (Tex. App.—Houston [14th Dist.] 1982, no writ). Also, that part of the rule making a verified account prima facie evidence unless a written denial under oath is filed does not apply to or cover transactions between third parties or parties who were strangers to the transactions. *Volvo Petroleum, Inc. v. Getty Oil Co.*, 717 S.W.2d 134, 138 (Tex.App.—Houston [14th Dist.] 1986, no writ). Such accounts, though verified, are hearsay as to such parties. *Id.*

American Alloy's argument that this is a proper case for a suit on a sworn account requires a somewhat strained interpretation of Rule 185. American Alloy bases the suit on its sale of steel plating to Swecomex, a transaction to which Armco was a stranger. Given the parameters discussed above, we find that such a suit should be founded on the original account. It is undisputed that the original account between Armco (the seller) and American Alloy (the buyer) was paid in full. This reasoning also applies to American Alloy's argument that upon its satisfaction of Swecomex's claim, title to the defective plate passed from Swecomex to American Alloy (i.e., from one party to another), thus satisfying the *Land Liquidators* and Rule 185 criteria. As the passing of title did not involve the original parties or the original account, we do not find the argument persuasive. Point of error five is thus overruled, and we affirm the summary judgment on that issue.

In points of error six, seven and eight, American Alloy argues error in the denial of its cross-motion for summary judgment because the company demonstrated its entitlement to judgment as a matter of law on its claims for indemnity, breach of an implied warranty of merchantability and breach of an express warranty of merchantability. Point of error nine contests the trial court's failure to award attorney's fees to American Alloy. Given our disposition of points of error one through five, we have impliedly found that American Alloy was not entitled to summary judgment nor to attorney's fees, and points of error six through nine are overruled. We affirm the trial court's judgment.