KAISER ALUMINUM & CHEMICAL SALES, INC., Plaintiff–Appellant,

v.

PPG INDUSTRIES, INC., Defendant–Appellee.

No. 94–1071.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1994.

Decided Dec. 23, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 21, 1995.*

---

* Posner, Chief Judge, Easterbrook, Manion and Kanne, Circuit Judges, voted to grant rehearing en banc.

1148

Richard A. Huser, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, Richard M. Knoth (argued), Climaco, Climaco, Semina-tore, Lefkowitz & Garofoli, Cleveland, OH, for plaintiff-appellant.

Nicholas C. Nizamoff, William C. Ahrbeck-er, White & Raub, Indianapolis, IN, James R. Miller (argued), Michael J. Sweeney, Dickie, McCamey & Chilcote, Pittsburgh, PA, for defendant-appellee.

Before CUDAHY, ALARCON,** and COFFEY, Circuit Judges.

ALARCON, Senior Circuit Judge.

Midwest Curtainwalls ("Midwest") sued Kaiser Aluminum ("Kaiser") for damages resulting from the delay in erecting a curtainwall facade due to Kaiser's untimely delivery of painted aluminum extrusions. Kaiser settled with Midwest for $500,000. Kaiser then brought this diversity action against PPG Industries ("PPG") seeking reimbursement for the settlement and attorneys' fees associated with the Midwest action. Kaiser alleged that the untimely performance of its contractual duties with Midwest was due to delays resulting from extra efforts it was forced to expend to remedy problems related to the defective paint provided to its subcontractor, Krestco, by PPG. Kaiser sued PPG under theories of implied breach of warranty (Count I), and common law indemnity (Count II). The district court, relying on Texas law, granted summary judgment for PPG on both counts. The district court ruled that Texas law did not allow Kaiser to recover the settlement amount and attorneys' fees from PPG. The court entered its final judgment on December 8, 1993. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm because we conclude that settlement and fee expenses cannot be recovered as consequential damages under Texas law.

## I. BACKGROUND

This action arose from a dispute relating to the construction of the Bank One office tower in Indianapolis, Indiana. Midwest entered into a contract to provide curtainwall panels for use on the exterior facade of the building. Kaiser agreed to provide approximately one

** Honorable Arthur L. Alarcon, Senior Circuit Judge for the Ninth Circuit, sitting by designa-tion.

million pounds of aluminum extrusion product to Midwest for use in fabricating the curtainwall panels.

The extrusions were to be coated with paint manufactured by PPG. Because Kaiser lacked the capacity to apply PPG's paint, it hired Krestco to paint the materials and ship them directly to Midwest. Although Kaiser representatives met with representatives from PPG to review and approve the paint, and later communicated regarding the paint problems which developed, Kaiser and PPG had no written contract. Krestco ordered and purchased the paint from PPG. Kaiser neither purchased nor came into possession of the paint.

By late July 1988, Krestco painted and shipped five truckloads of Kaiser's aluminum extrusions to Midwest. Shortly thereafter, Midwest contacted Kaiser to report that the paint on the extrusions was defective. Midwest complained that there was "trash" in the paint. It rejected a portion of the extrusions.

Due to the problems with the paint, Krestco informed Kaiser that it would no longer perform its contract with Kaiser. Kaiser replaced Krestco with a new subcontractor, Western Extrusions. Western Extrusions agreed to expedite the painting of the material. Kaiser rearranged its production schedule and re-extruded new material so that Midwest would be adequately supplied with extrusions with only a limited delay. As a result of the delay, erection of the curtainwall was not completed on schedule.

Midwest filed a diversity action against Kaiser in the United States District Court for the Northern District of Ohio for damages resulting from the delay. Kaiser notified PPG of the action, but did not join PPG as a third-party defendant. Kaiser settled the action filed by Midwest for $500,000.

Kaiser then brought this diversity action against PPG seeking "reimbursement of the principal amount paid by Kaiser in settlement of the Midwest Lawsuit, [and $250,000 in] costs incurred in defending the Midwest Lawsuit, including attorneys' ... fees." Kaiser alleged that its untimely performance with Midwest was directly attributable to PPG's defective paint. Kaiser sued under theories of implied breach of warranty (Count I), and common law indemnity (Count II).

Prior to the date set for trial, PPG filed three motions in limine seeking to exclude evidence proffered by Kaiser relating to the amount and reasonableness of the settlement it paid to Midwest. PPG argued that this evidence should not be admitted at trial because, under Texas law, the settlement and fees were not recoverable as consequential damages. Kaiser did not file a brief in response, but submitted to the district court copies of pertinent Texas Business and Professions Code sections, as well as cases and other materials regarding the issue whether the settlement and fees were recoverable as consequential damages for a breach of implied warranty.

The district court granted PPG's motions, thus effectively precluding Kaiser from offering any evidence relating to the settlement and fee amounts. The court then vacated the date set at that time for trial "to allow Kaiser additional time to develop evidence, if any, regarding other consequential damages it may claim which were proximately caused by PPG's alleged breach." Kaiser, however, advised the court that it intended to limit its damages solely to the settlement and fees.

Ultimately, the district court granted summary judgment for PPG on both counts of Kaiser's complaint. The district court held that, under Texas law, the amount paid in settlement of an action and the costs of defense were not recoverable as consequential damages. Kaiser argues before this court that its "suit for breach of warranty and its claims for damages are clearly supported by Texas law and the Uniform Commercial Code ... [and that on] that basis, ... the recovery of settlement amounts and costs ... is clearly permitted."

## II. *ANALYSIS*

We review *de novo* a district court's decision to grant summary judgment. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991). In conducting this review, we draw all reasonable inferences in

the light most favorable to the nonmoving party. *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). Summary judgment is appropriate when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### A. *Count I: Implied Breach of Warranty*

■ In Count I, Kaiser prayed for "reimbursement of the principal amount paid by Kaiser in settlement of the Midwest Lawsuit, [and $250,000 in] costs incurred in defending the Midwest Lawsuit, including attorneys' ... fees." Under Texas law, the procedure for obtaining such reimbursement is by "vouching in" the third party to the action at issue. Tex.Bus. & Comm.Code § 2.607.[1] The voucher method may not be invoked, however, when the underlying action was settled instead of fully litigated to judgment. *CGM Valve Co. v. Gulfstream Steel Corp.,* 596 S.W.2d 161, 163 (Tex.App.1980).

■ Apparently recognizing this bar, Kaiser adopted a novel approach in an attempt to recover the amount of the settlement and its legal costs. Kaiser labeled the settlement and legal costs "consequential damages" and sought to recover under Texas Business and Commercial Code sections 2.714 and 2.715 for breach of warranty. Tex.Bus. & Comm. Code §§ 2.714, 2.715. The district court rejected this attempt, stating that Texas authority did not support Kaiser's argument that it could recover such expenses as consequential damages. We agree.

The precise question presented has not been ruled upon by the Texas Supreme Court. Texas has, however, expressed a policy against allowing parties to recover, in a voucher proceeding, the amount paid in other actions because settlements do not result from "full dress, arm's length, good faith, adversary proceeding[s]." *CGM Valve,* 596 S.W.2d at 163 (internal quotation omitted).

Rather, the settlement is likely to be "agreed upon without vigorous contest or the best effort of both litigants." *Id.* at 164. For this reason, in *CGM Valve,* the Court of Civil Appeals of Texas reversed the judgment in a common law indemnity action granting the plaintiff as damages the amount of its settlement from litigation with a third party. *Id.* The rationale employed by the court in *CGM Valve* applies to the issue before this court. We are persuaded that the Texas Supreme Court would not permit Kaiser to circumvent the rule announced in *CGM Valve* by recovering as consequential damages what it would not be able to recover through the voucher procedure.

Kaiser contends, however, that Texas' breach of warranty provisions are based upon the Uniform Commercial Code and should be interpreted in conformance with similarly worded statutory provisions in other jurisdictions and the purposes of the UCC. Kaiser cites several cases to support its position that the amount paid in settlement of an action and the attendant legal costs are recoverable under the Texas Business and Commercial Code. Kaiser's reliance on the cited authority is misplaced. Each case is readily distinguishable.

In two of the cases cited by Kaiser, *Chemco Industrial Applicators Co. v. E.I. du Pont de Nemours & Co.,* 366 F.Supp. 278 (E.D.Mo. 1973), and *Safeway Stores, Inc. v. Schreiber Cheese Co.,* 326 F.Supp. 504 (W.D.Mo.1971), *rev'd,* 457 F.2d 962 (8th Cir.1972), the plaintiffs sought reimbursement for judgments obtained against them in prior litigation. *Chemco,* 366 F.Supp. at 281–83; *Safeway,* 326 F.Supp. at 509. Neither case involved a settlement. Thus, they are not relevant to the issue we must decide.

*Guy James Construction Co. v. Trinity Industries, Inc.,* 462 F.Supp. 252 (N.D.Tex. 1978), *aff'd in part and rev'd in part,* 644 F.2d 525 (5th Cir.1981), and *Polidori v. Kordys, Puzio & Di Tomasso,* 217 N.J.Super.

---

1. Section 2.607 provides:

   (e) Where the buyer is sued for breach of warranty or other obligation for which his seller is answerable over

   (1) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound.

   Tex.Bus. & Comm.Code § 2.607(e).

424, 526 A.2d 230 (1987), do not support Kaiser's argument. In each case, the court held that the plaintiff could recover settlement expenses from prior litigation as consequential damages in a breach of contract action against the defendant. *Guy James,* 462 F.Supp. at 257; *Polidori,* 526 A.2d at 235–36. No contract existed between Kaiser and PPG. Kaiser's action is based on a breach of implied warranty under the UCC.

Kaiser's reliance on *Wood v. Component Construction Corp.,* 722 S.W.2d 439 (Tex. App.1986) is equally unpersuasive. In *Wood,* the court held the consequential damages caused by the defendant's breach of implied warranty could be established by evidence of the settlement amount the plaintiff incurred in prior litigation. *Id.* at 445–46. However, *Wood* involved a claim filed under the Texas Deceptive Trade Practices Act, not a claim for implied breach of warranty under Texas' version of the UCC. *Id.* at 446.

Kaiser also refers us to *Certain–Teed Products Corp. v. Goslee Roofing & Sheet Metal, Inc.,* 26 Md.App. 452, 339 A.2d 302 (1975); *Woodbury Chemical Co. v. Holgerson,* 439 F.2d 1052 (10th Cir.1971); *Texsun Feedyards, Inc. v. Ralston Purina Co.,* 311 F.Supp. 644 (N.D.Tex.1970), *aff'd in part and rev'd in part,* 447 F.2d 660 (5th Cir.1971), and *Step–Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643 (3d Cir.1990). They do not further Kaiser's cause. In each of these cases, the plaintiffs introduced evidence of the actual injury they suffered as a result of the defendants' conduct. The plaintiffs submitted evidence regarding the expenses they incurred reroofing several buildings (*Certain–Teed*) and reapplying an herbicide (*Woodbury*) when defective materials supplied by the defendants negatively affected the original work. *Certain–Teed,* 339 A.2d at 302; *Woodbury,* 439 F.2d at 1053.

*Texsun* and *Step–Saver* involved the recovery of actual commercial losses. In *Texsun,* the plaintiff recovered as consequential damages business expenses it incurred as a result of the defendant's breach. *Texsun,* 311 F.Supp. at 645. In *Step–Saver,* the plaintiff sought to recover expenses incurred replacing the defendant's defective computer components in an attempt to maintain its customers' goodwill. *Step–Saver,* 912 F.2d at 652. In neither case did the plaintiff seek to recover the amount paid in settlement in prior litigation.

Similarly, in *Nezperce Storage Co. v. Zenner,* 105 Idaho 464, 670 P.2d 871 (1983), cited by the dissent, the plaintiff wheat purchaser was allowed to recover from the defendant wheat seller the expenses the plaintiff incurred when the wheat proved unsuitable and the plaintiff was forced to reimburse his customers for damages they suffered from planting defective seed. *Id.* at 874. The plaintiff in *Nezperce* introduced evidence of the actual injury it suffered as the result of the defendant's conduct, not the amount of a settlement it paid to a third party in previous litigation.

The dissent also cites *City Welding & Manufacturing Co. v. Gidley–Eschenheimer Corp.,* 16 Mass.App.Ct. 372, 451 N.E.2d 734 (1983). In *City Welding,* the Appeals Court of Massachusetts ruled that it was proper to admit as evidence of consequential damages a *judgment* obtained against the plaintiff in prior litigation. *Id.* 451 N.E.2d at 737. By contrast, Kaiser intends to rely upon the amount of a settlement it paid to establish its consequential damages. Because this settlement did not result from a "full dress ... adversary proceeding," *CGM Valve,* 596 S.W.2d at 163 (internal quotation omitted), we believe the Texas Supreme Court would conclude that it cannot be used to demonstrate consequential damages.

Curiously, Kaiser also relies upon *Stewart & Foulke, Inc. v. Robertshaw Controls Co.,* 397 F.2d 971 (5th Cir.1968). In *Stewart,* the Fifth Circuit held that a judgment entered after settlement did not result from a "full dress, arm's length, good faith, adversary proceeding," and ruled that those litigation expenses were therefore not recoverable under a theory of breach of implied warranty. *Id.* at 973–74 (internal quotation omitted). Under the rationale of *Stewart,* the settlement without judgment that concluded the litigation between Kaiser and Midwest would also be nonrecoverable through a breach of implied warranty action.

The dissent cites the Restatement of Contracts in support of the proposition that Kaiser may recover its settlement expenses in this action. The dissent neglects to note, however, that the comment quoted begins with the statement "Sometimes a breach of contract results in claims by third persons against the injured party." Restatement (Second) of Contracts § 351 cmt. c (1981). The Restatement goes on to state, in the passage quoted by the dissent, that parties found in breach of contract may be held liable for any judgment, settlement, or litigation expenses incurred by the injured party as a result of the breach. As noted above, there was no contract between Kaiser and PPG. This action is premised upon an implied breach of warranty, not a breach of contract.

Given the absence of any relevant authority to the contrary, we must adhere to the principles announced in *CGM Valve*. They cut against Kaiser's theory that it can recover its settlement expenses from PPG.

Kaiser's argument that it is entitled to recover the attorneys' fees incurred in settling the Midwest action is contrary to Texas law. "In Texas, attorneys' fees expended in prior litigation with third parties are not recoverable as damages: attorneys' fees are only recoverable when provided for by contract or by agreement between the parties." *Peterson v. Dean Witter Reynolds, Inc.*, 805 S.W.2d 541, 549 (Tex.App.1991).

### B. *Count II: Indemnity*

■ The district court granted PPG's motion for summary judgment on the indemnity count on the basis that "Texas law does not afford Kaiser an implicit right to indemnification from PPG." Kaiser contends this was error. We disagree.

■ "There are two basic categories of indemnity under Texas law—common law and contractual." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 (5th Cir.1992). Because no contract for indemnity exists between Kaiser and PPG, Kaiser's indemnity claim must be established under common law.

■ The situations in which an action for common law indemnity may be maintained under Texas law are "extremely limited." *Id.* (citing *Cypress Creek Utility Serv. Co. v. Muller*, 640 S.W.2d 860, 864 (Tex.1982)). Texas common law indemnity principles may only be invoked in the contexts of agency or surety, *American Alloy Steel, Inc. v. Armco, Inc.*, 777 S.W.2d 173, 175 (Tex.App.1989), or in two special classes of tort-based actions: (1) in product liability cases to protect an innocent retailer in the chain of distribution of the defective product, *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 432 (Tex.1984), and (2) in negligence actions to protect a defendant whose liability is vicarious in nature, *Aviation Office of America, Inc. v. Alexander & Alexander, Inc.*, 751 S.W.2d 179, 180 (Tex.1988).

■ Kaiser failed to present evidence demonstrating that it fell within any of these narrow categories. Kaiser contends that its evidence that PPG's paint was defective and that it interacted with PPG representatives presented a genuine issue as to whether it qualified as an innocent retailer in the chain of distribution. The factual record does not support this proposition. Kaiser's interaction with PPG did not place it in the chain of distribution of the defective paint. The paint was purchased by Krestco and Western Extrusions, not Kaiser. Moreover, the "innocent retailer" exception to the rule circumscribing the availability of common law indemnity applies in product liability cases. This is not a tort action.

AFFIRMED.

CUDAHY, Circuit Judge, dissenting.

Texas may, in the view of its boosters as well as its detractors, be "different," but it is certainly not as "different" as the majority opinion would have it. The basic error of the majority is to confuse the cost consequences of a resolution of a commercial dispute as having a binding (collateral estoppel) effect on a third party with the quite different question whether that resolution is evidence of loss for which the third party may be liable in whole or in part. Here the settlement which Kaiser made with Midwest and the money it paid pursuant to the settlement was surely its "loss." There is no earthly

reason under the Code or under Texas law why Kaiser may not seek to recover its loss, or some reasonable part of it, from a party it claims is responsible for it. Nothing has been cited which should exclude such losses from the rather capacious category of "consequential damages."

Of course, the Code (Tex.Bus. & Comm. Code § 2.607) provides for "vouching in." Under this procedure, the allegedly liable third party may be made a party to the underlying law suit and will be bound by the judgment in that proceeding. *See* Alphonse M. Squillante and John R. Fonseca, *Williston on Sales* (4th ed. 1974) § 22–10 ("Once [a] third party has been successfully vouched in, he becomes bound in any subsequent litigation between himself and the defendant by any finding of fact, as well as for the measure of damages awarded by the court."). And that procedure, according to *CGM Valve Co. v. Gulfstream Steel Corp.,* 596 S.W.2d 161 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref. n.r.e.), requires the entry of judgment. That point is sensible enough, an application of the long-accepted principle that collateral estoppel does not apply to issues not "actually litigated." But the majority has cited nothing suggesting that "vouching in" is a mandatory procedure, which must be pursued or any claim for the loss forfeited.[1] The prevailing view of the authorities is distinctly to the contrary. "Of course, this procedural device [vouching in or impleader] is not mandatory and, where available, is not a prerequisite to a recovery the defendant may have over against the third party defendant." Squillante and Fonseca, *supra,* § 22–10. This much is clear from the Code's use of permissive language in setting out the vouching in procedure. Tex.Bus.Code. § 2.607(5)(a) ("Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over he *may* give the seller written notice of the litigation.") (emphasis added).

The Texas legislature, in enacting Tex.Bus. Code §§ 2.607 (vouching in) and 2.715 (conse-quential damages), adopted §§ 2–607 and 2–715 of the Uniform Commercial Code without modification. And the UCC itself (especially § 1–102), as our cases recognize, by its own terms calls for uniform construction among adopting jurisdictions. *See Northrop Corp. v. Litronic Industries,* 29 F.3d 1173, 1178 (7th Cir.1994). To that end, cases from other jurisdictions allow defendants who have suffered judgments or who have settled with injured plaintiffs, but who have not taken advantage of the vouching in procedure of § 2–607(5), to recover the judgment paid or their settlement costs from the responsible party, as consequential damages. *See City Welding & Manufacturing Co. v. Gidley–Eschenheimer Corp.,* 16 Mass.App.Ct. 372, 451 N.E.2d 734 (1983) (where manufacturer's breach of warranty caused buyer to suffer judgment, failure to notify manufacturer no bar to buyer's suit); *Nezperce Storage Co. v. Zenner,* 105 Idaho 464, 670 P.2d 871 (1983) (purchaser of wheat for resale may recover losses sustained in reimbursing customers for damages they suffered for planting defective seed); *Step–Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643 (3d Cir.1990) (re-seller of allegedly defective computer equipment, in suit against manufacturer, may recover settlement costs and monies reasonably expended in effort to maintain customers' goodwill without resorting to § 2–607(5)—though manufacturer can defend in such action by arguing that computers were not defective or that settlement expenses were unreasonable). *Cf. Neville Chem. Co. v. Union Carbide Corp.,* 422 F.2d 1205 (3d Cir.) (where purchaser sued supplier to recover damages for money paid to settle claims against it, it was error to instruct the jury that—if the supplier had notice of the claims—the supplier bore the burden of showing that the settlements were unreasonable), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970).

In these circumstances, the settling party cannot of course expect the manufacturer to be *bound* by the settlement. Both the exis-

---

1. It in any case appears that in federal court the vouching in procedures of UCC § 2–607(5) would be supplanted by the impleader provisions of Federal Rule of Civil Procedure 14. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 1446 ("Although state law governs whether a substantive right to relief exists, federal law determines whether that right may be asserted by way of impleader.").

tence of the defect, and, if the product is defective, the amount of damages the original buyer would have reasonably suffered on account of the defect (i.e. the reasonableness of the settlement and attorneys' fees—a function of the original buyer's duty to mitigate damages) are up for grabs in the second litigation. There is nothing terribly complicated about this principle. It is a basic proposition of contract law, and one from which there is no reason to imagine that either the UCC or Texas law would stray:

> The party in breach is liable for the amount of any judgment against the injured party together with his reasonable expenditures in the litigation, if the party in breach had reason to foresee such expenditures as the probable result of his breach at the time he made the contract.... A failure to notify the party in breach in advance of the litigation may prevent the result of the litigation from being conclusive as to him. But to the extent that the injured party's loss resulting from the litigation is reasonable, the fact that the party in breach was not notified does not prevent the inclusion of that loss in the damages assessed against him. In furtherance of the policy favoring private settlement of disputes, the injured party is also allowed to recover the reasonable amount of any settlement made to avoid litigation, together with the costs of settlement.

Restatement (Second) of Contracts § 351, comment c (1981).

The majority has attempted to distinguish the cases and other authorities I have cited, making distinctions which are without relevance to the issue before us. Thus, *Nezperce Storage Co. v. Zenner*, 105 Idaho 464, 670 P.2d 871, is said to involve reimbursement of customers of the buyer, who then looked to the seller (Zenner) for compensation. The reimbursement made to customers is, of course, an agreed payment—indistinguishable for present purposes from a "settlement." *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, is said to involve "recovery of actual commercial losses"—again agreed amounts impossible to distinguish from a settlement of litigation. *City*

*Welding & Manufacturing Co. v. Gidley-Eschenheimer Corp.*, 451 N.E.2d 734, concerned a judgment admitted as *evidence of consequential damages*. This is quite different from attempting to derive collateral estoppel effect from such a judgment. As the Restatement (Second) of Contracts § 351, comment c (1981), *supra*, makes clear, for purposes of establishing *evidence* of the loss sustained by the injured party, a judgment and a reasonable settlement are treated in exactly the same way. Only if the loss is to be regarded as conclusive and binding (as a matter of collateral estoppel) is it essential that the loss be established by judgment.

Here, Kaiser is not claiming that PPG is bound by Kaiser's settlement. Kaiser merely asserts that the settlement is evidence of Kaiser's loss resulting from PPG's manufacture of defective paint. The majority's requirement that the underlying lawsuit be litigated to judgment to justify any claim against the ultimately liable party obviously has the very unfortunate effect of chilling any otherwise desirable effort to settle. I therefore respectfully dissent.