**DAKOTA GRAIN CO., INC.,**
**Plaintiff and Appellee,**

v.

**Anthony EHRMANTROUT, Defendant**
**and Appellant.**

**Civ. No. 920363.**

Supreme Court of North Dakota.

June 16, 1993.

Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for plaintiff and appellee; argued by Timothy A. Priebe.

Anderson & Anderson, Bismarck, and Halpern Law Office, PC, Glen Ullin, for defendant and appellant; argued by Michael L. Halpern. Appearance by Sonna M. Anderson.

LEVINE, Justice.

Anthony Ehrmantrout appeals from a district court judgment awarding damages to Dakota Grain Company, Inc. (the Elevator) for breach of a grain sale contract. We hold that the trial court correctly concluded that Ehrmantrout breached the contract, but we further hold that the trial court must redetermine consequential damages, after clarifying its findings relevant to that issue. We affirm in part, reverse in part, and remand for a redetermination of consequential damages.

During the Spring of 1989, Ehrmantrout orally agreed to sell the Elevator some of his Lenn variety hard red spring wheat. The Elevator intended to sell this wheat to other farmers for seeding and insists that Ehrmantrout was informed that the wheat would be used as seed. Ehrmantrout claims that he was neither told nor had reason to believe that the Elevator intended to resell his wheat for seed. Ehrmantrout delivered four truck loads of spring wheat to the Elevator in April 1989.

In early May 1989, the Elevator manager asked Ehrmantrout if he would agree to sell more of his spring wheat to the Elevator. Ehrmantrout agreed and on May 9, 1989, he delivered to the Elevator two truck loads of wheat, totalling 629.49 bushels. The Elevator cleaned this wheat and sold about 585 bushels of it to four different farmers for seeding. The farmers planted the seed, but none of the crops matured. It was ultimately determined that the wheat planted by the four farmers was not Lenn spring wheat, but a winter wheat which, by its nature, will not produce a crop when seeded during the spring of the year. The Elevator paid the four farmers a total of $22.201 as damages for selling them winter wheat to seed instead of spring wheat. The Elevator then filed this action for damages against Ehrmantrout, alleging various theories of recovery, including breach of contract, breach of warranty, negligence and fraud.

The parties made this case much more complex and confusing than was necessary by trying the case on mixed principles of tort and contract law. Yet, this is a classic breach of warranty case, resolvable by application of Chapter 41–02, N.D.C.C., our codification of the Article 2—Sales provisions of the Uniform Commercial Code. Despite the lack of clarity in the parties' presentation of their respective legal theories, the trial court's analysis was close to the mark and, in fact, its resolution of the case, except for some ambiguity in its findings regarding consequential damages, is in accord with Chapter 41–02, N.D.C.C.

The trial court concluded that Ehrmantrout breached his oral sale contract with the Elevator by delivering winter wheat instead of Lenn spring wheat. Using comparative fault principles, the court concluded that Ehrmantrout was 51 percent responsible and the Elevator was 49 percent responsible for the consequential damages arising from the sale of the wheat to the four farmers for spring seeding. The trial court entered judgment awarding the Elevator $125.90 in general damages, representing the difference in the value of the spring wheat Ehrmantrout contracted to sell the Elevator and the value of the winter wheat that he actually delivered to the Elevator. In addition, the trial court awarded the Elevator consequential damages of $11,332.51, representing 51 percent of the total damages incurred by the Elevator in its settlement with the four farmers. Ehrmantrout filed a post-trial motion to amend the trial court's findings of fact, conclusions of law and judgment and filed an alternative motion for a new trial. These post-trial motions were denied by the court, and Ehrmantrout appealed.

Ehrmantrout asserts on appeal that the trial court erred by not specifying what act or omission by Ehrmantrout constituted negligent conduct. The parties unnecessarily complicated this case by using negligence terminology to describe Ehrmantrout's breach of his express warranty to deliver Lenn spring wheat. Under the Uniform Commercial Code, a bargain that includes a description of the goods to be sold creates an express warranty that the goods will conform to that description. Section 41–02–30(1)(b), N.D.C.C. The contract is breached when the delivered goods do not conform to the description, irrespective of whether the seller acted negligently or otherwise. Section 41–02–93(1), N.D.C.C. So, the seller's negligence, or lack of negligence, is not relevant to the question of whether the seller breached his or her express warranty to deliver conforming goods. A mere breach of contract does not, by itself, furnish a basis for liability in tort for negligence. *Seifert v. Farmers Union Mutual Insurance Company*, 497 N.W.2d 694 (N.D.1993). Conduct that constitutes a breach of contract does not sub-

ject the actor to an action in tort for negligence, unless the conduct also constitutes a breach of an independent duty that did not arise from the contract. *Pioneer Fuels, Inc. v. Montana–Dakota Utilities,* 474 N.W.2d 706 (N.D.1991). *See also Cooperative Power v. Westinghouse Electric Corporation,* 493 N.W.2d 661 (N.D.1992) (to hold a manufacturer liable in tort for economic loss for damage to a machine sold in a commercial transaction, would eliminate the distinction between tort and warranty actions). The Elevator has not alleged that Ehrmantrout breached any duty, apart from the obligation to deliver spring wheat under the contract, upon which to predicate liability in tort for negligence.

We conclude that the question of whether Ehrmantrout was negligent in delivering winter wheat instead of spring wheat is not relevant to the court's ultimate finding that Ehrmantrout breached the contract. Therefore, Ehrmantrout was not prejudiced by the court's failure to specify what conduct in breaching the contract, if any, was the result of negligence, and Ehrmantrout cannot predicate reversible error upon that issue.

■ Ehrmantrout also asserts that the trial court's findings that Ehrmantrout delivered to the Elevator winter wheat instead of spring wheat and that the wheat purchased by the four farmers was wheat sold to the Elevator by Ehrmantrout are not supported by the evidence. We disagree. A trial court's findings of fact will not be overturned on appeal unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P. A finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dakota Bank and Trust Co. of Fargo v. Federal Land Bank of Saint Paul,* 437 N.W.2d 841 (N.D.1989). There is evidence in the record that the Elevator, upon receiving the grain delivered by Ehrmantrout on May 9, 1989, cleaned it and placed it in a separate bin and then resold it to the four farmers for seeding. There is also evidence that winter wheat,

as distinguished from hard red spring wheat, will not mature when it is seeded in the spring and that the results experienced by the four farmers who planted the wheat Ehrmantrout had sold to the Elevator clearly demonstrate that the farmers were sold and planted winter wheat, rather than spring wheat. There is also evidence that in May 1989, Ehrmantrout had both winter wheat and spring wheat stored on his farm and that the Elevator did not have winter wheat in storage, except for the wheat that was allegedly delivered by Ehrmantrout. We are not convinced that the trial court made a mistake in finding that Ehrmantrout delivered winter wheat to the Elevator or in finding that the wheat delivered by him was ultimately resold to the four farmers as seed. Those findings are not clearly erroneous.

Ehrmantrout also asserts that the trial court erred in awarding consequential damages in this case. The appropriate measure of damages for a breach of warranty is set forth under Section 41–02–93(2) and (3), N.D.C.C. [U.C.C. 2–714(2) and (3) ]:

"2. The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"3. In a proper case any incidental and consequential damages under the next section may also be recovered."

The trial court awarded general damages to the Elevator of $125.90 based upon a 20 cent per bushel difference in value between the spring wheat for which Ehrmantrout was paid and the winter wheat that he actually delivered (629.49 bushels delivered × $.20 per bushel price difference = $125.90). Section 41–02–93(2), N.D.C.C. Ehrmantrout does not object to this award of general damages.

However, Ehrmantrout does object to the court's award of consequential damages. In awarding consequential damages, the

trial court compared the "fault" of Ehrmantrout and the Elevator that caused those damages and apportioned them accordingly. Before we discuss the elements necessary to award consequential damages, we must first determine whether the court erred in applying comparative fault principles here.

■ Our comparative fault law, Chapter 32–03.2, N.D.C.C., defines the term "fault" to include "breach of warranty ... and failure to exercise reasonable care to avoid an injury or to mitigate damages." Section 32–03.2–01, N.D.C.C. Under Section 32–03.2–03, N.D.C.C., "fault" is expressly defined to mean "product liability involving negligence or strict liability or *breach of warranty* for product defect." (Emphasis added.) So, under this section pure comparative fault applies in a breach of warranty action and damages are diminished in proportion to the amount of contributing fault of the person recovering the damages. Section 32–03.2–03, N.D.C.C.

Clearly then, the trial court did not err in comparing fault for purposes of awarding consequential damages in this case. *See Peterson v. Bendix Home Systems, Inc.,* 318 N.W.2d 50 (Minn.1982) (comparative fault applies to consequential damages in a breach of warranty action).

■ Ehrmantrout also argues that in awarding consequential damages, the trial court did not first determine whether those damages were foreseeable by Ehrmantrout and, if foreseeable, whether the Elevator could reasonably have prevented them. Consequential damages are defined under 41–02–94(2), N.D.C.C. [U.C.C. 2–715(2)]:

"2. Consequential damages resulting from the seller's breach include:

"a. Any loss resulting from general or particular requirements and needs of *which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;* and

"b. Injury to person or property proximately resulting from any breach of warranty." (Emphasis added.)

Under this provision, the primary factor for awarding consequential damages is whether the losses were foreseeable by the seller at the time he or she entered the contract. *Schneidt v. Absey Motors, Inc.,* 248 N.W.2d 792 (N.D.1976); White & Summers, Uniform Commercial Code § 10–4 (1988). The Official Comment to this section of the Uniform Commercial Code is instructive:

"Subsection (2) operates to allow the buyer, in an appropriate case, any consequential damages which are the result of the seller's breach. The 'tacit agreement' test for the recovery of consequential damages is rejected. Although the older rule at common law which made the seller liable for all consequential damages of which he had 'reason to know' in advance is followed, the liberality of that rule is modified by refusing to permit recovery unless the buyer could not reasonably have prevented the loss by cover or otherwise." Uniform Commercial Code (U.L.A.) Section 2–715 p. 418 (1989).

Following the requirements of this uniform provision on consequential damages, the Idaho Supreme Court upheld an award of consequential damages under factual circumstances nearly identical to those in this case. *Nezperce Storage Co. v. Zenner,* 105 Idaho 464, 670 P.2d 871 (1983). The Zenners, wheat farmers in Idaho, agreed to sell spring wheat to Nezperce but instead delivered winter wheat, which was subsequently resold to farmers, who planted it in the springtime and experienced complete crop failures. Nezperce paid for the farmers' damages and then sued the Zenners for reimbursement. The court, based upon a jury verdict, required the Zenners to reimburse Nezperce. In making this award of consequential damages, the court concluded that there was evidence supporting the jury's finding that the Zenners had reason to know that the wheat they sold Nezperce was intended to be resold as wheat seed.

The same analysis for awarding consequential damages applies in this case. As a prerequisite to awarding consequential damages against Ehrmantrout in favor of the Elevator, one must find that Ehrman-

trout either knew or had reason to know when he entered the contract, that the spring wheat was going to be resold as seed. Unfortunately, the trial court's findings on this issue are unclear.

In its findings of fact, the court stated that prior to delivering the wheat, "Ehrmantrout brought a sample of the grain to Dakota Grain to be germination tested." Ehrmantrout's testimony indicates that he was aware that the only reason for doing a germination test was to determine whether the grain was useable for seed. The court also found that the Elevator manager "called Ehrmantrout and told him the germination was acceptable and that he could use the wheat," and that Ehrmantrout orally contracted with the Elevator on or about May 9, 1989, "to deliver two loads of Lenn spring wheat, which was subsequently to be sold to local farmers for seeding purposes." The implication of these findings is that Ehrmantrout either knew or had reason to know that the wheat he was selling to the Elevator was intended to be resold as seed.

However, in its order denying the posttrial motions, the court made the following relevant statements:

> "While there certainly is some evidence that [Ehrmantrout] knew or reasonably should have known that the [Elevator] intended to resell his wheat as seed wheat, I did not find that such evidence was sufficient to prove by a preponderance that Ehrmantrout had such personal knowledge.... [B]y the application of comparative negligence, the [Elevator] has already been 'penalized' for its inability to prove that Ehrmantrout actually knew or should have known that the wheat involved was intended for resale as seed stock."

These seemingly inconsistent statements by the trial court on this issue leave unresolved the question of whether Ehrmantrout either knew or should have known when he entered the contract, that his wheat was intended to be resold by the Elevator for seed. The resolution of that question is the key element in determining whether an award of consequential damages is appropriate in this case. So, we must remand this case for clarification of the court's findings on this issue.

■ Ehrmantrout argues that the Elevator's actions are the sole cause of the consequential damages and that the trial court erred in apportioning fault. The apportionment of fault for purposes of awarding consequential damages only becomes an issue in this case if the trial court finds that Ehrmantrout either knew or had reason to know that his wheat was intended to be resold for seed. In the absence of that finding, it would be inappropriate for the court to award consequential damages. Section 41–02–94(2)(a), N.D.C.C.

■ If, however, the court does find that Ehrmantout had reason to know that the wheat was intended to be resold for seed, then the second element, *i.e.*, whether the Elevator could have reasonably prevented the consequential damages, must be resolved because it, too, is a prerequisite to awarding consequential damages. Section 41–02–94(2)(a), N.D.C.C. We conclude that the court's findings with regard to this element of consequential damages are clear and that on remand, the court does not have to redetermine this issue. The trial court found that the Elevator was 49 percent responsible for the consequential damages and deducted that percentage from the award of consequential damages. The court stated in its memorandum opinion, that the elevator "failed to take reasonable measure (sic) to mitigate or reduce to a minimum the losses which eventually resulted." In discussing the Elevator's failure to mitigate, the court stated that, "there was no testing of any kind of the wheat delivered on May 9." Unless reasonable persons could not disagree, the court's allocation of fault is a finding of fact that will not be overturned on appeal, unless we are convinced that the court has made a mistake. *See Jones v. Ahlberg*, 489 N.W.2d 576 (N.D.1992). We conclude that the trial court's finding of 49 percent causation of the consequential damages by the Elevator is not clearly erroneous.

We affirm the trial court's determination that Ehrmantrout breached his contract

with the Elevator and the court's award of $125.90 in general damages. However, we hold that, as a necessary element of consequential damages, the Elevator was required to prove that Ehrmantrout either knew or should have known when he entered the contract, that his wheat was intended to be resold by the Elevator for seed. The trial court's findings on this key element are unclear and need to be clarified, in order to resolve the consequential damages issue. Accordingly, we reverse the award of consequential damages and remand for clarification of the findings and a redetermination on that issue.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE JJ., concur.