1999 ND 45

Terry NARUM, Bill Mackinnon, Jerry Hove, Ken Kraft, Orren Anderson, Timothy Wood, James Hatlelid, Roger Spelhaug, Charles Sprenger, and Ted Scherr, Plaintiffs and Appellants,

v.

FAXX FOODS, INC., a Minnesota corporation, Richard A. Olsen, Roger W. Sweet, Defendants,

Robert D. King, Earl A. King, Terry King, James F. Ramsay, Terry DeRoche, and Jerome Schmidt, Defendants and Appellees.

Civil No. 980212

Supreme Court of North Dakota.

March 18, 1999.

William C. Kelsch (argued) and Timothy J. Wahlin (appearance), of Kelsch, Kelsch, Ruff & Kranda, Mandan, for plaintiffs and appellants.

Michael C. McCarthy (argued), Minneapolis, MN, and Michael L. Wagner (appearance), of Wheeler Wolf, Bismarck, for defendants and appellees Robert D. King, Earl A. King, Terry King, and Terry DeRoche.

Michael L. Wagner, of Wheeler Wolf, Bismarck, for defendant and appellee James F. Ramsay.

Steven A. Johnson, of Vogel, Weir, Bye, Hunke & McCormick, Ltd., Fargo, for defendant and appellee Jerome Schmidt. Submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] Terry Narum, Bill Mackinnon, Jerry Hove, Ken Kraft, Orren Anderson, Timothy Wood, James Hatlelid, Roger Spelhaug, Charles Sprenger, and Ted Scherr appealed from a summary judgment dismissing their action against Robert D. King, Earl A. King, Terry King, James F. Ramsay, Terry De-

Roche, and Jerome Schmidt[1] for violations of the Securities Act of 1951, N.D.C.C. ch. 10–04 (Securities Act). We conclude the trial court did not err in ruling the plaintiffs' action was time barred under N.D.C.C. § 10–04–17(1), and the defendants were not equitably estopped from claiming the benefit of the one-year statute of limitations. We also conclude the court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint. We therefore affirm.

I

[¶ 2] Faxx Foods, Inc. (Faxx), was incorporated in Minnesota by Richard A. Olsen and Roger W. Sweet in April 1991 to act as a holding company and distributor for various food preparation and distribution businesses. Olsen, Faxx's president, was looking for investors and was interested in investment opportunities in rural areas. Sweet was also president of Lochmor Investment Services, Inc. (Lochmor), a company engaged in arranging corporate acquisitions. In November 1991, Faxx hired Lochmor to assist in acquiring control of a food services corporation.

[¶ 3] Richard Saunders of Minot was the principal owner of several food distribution companies, including Dakco Distributors, Inc. (Dakco), and its subsidiary, NoDak Distributing, Inc. (NoDak). In late 1991, Saunders contacted Sweet about Lochmor assisting him in selling NoDak. Sweet introduced Olsen to Saunders and to Terry King, Earl King, Robert King, and Terry DeRoche,[2] who were directors of Faxx. Faxx was interested in purchasing NoDak, and in early 1992 issued a statement of intent to purchase the company for $1,083,413.

[¶ 4] Olsen began spending time at NoDak's offices to familiarize himself with the business and learn how to increase its sales. Many officers, directors, and employees of NoDak and Dakco became interested in investing in Faxx, which needed to attract investors and lenders to finance the acquisition. On May 8, 1992, Faxx submitted to the North Dakota Securities Commissioner an application for exemption from the registration provisions of the Securities Act. The Commissioner, on May 27, 1992, approved "the use of the limited offeree exemption provided under [N.D.C.C. § 10–04–06(9)(a) ] for an offering of Common Stock issued by the subject issuer to not more than 25 offerees in this State" that was effective for 12 months. Faxx was authorized to offer in North Dakota 300,000 shares of its 500,000 total shares for $1 per share. The minimum amount to be offered any one investor was 5,000 shares. All proceeds from the $300,000 offering would be used as "working capital and for acquisitions," with an estimated cost of the North Dakota offering of $1,000.

[¶ 5] Faxx violated the terms of the limited offeree exemption. Faxx sold 505,000 shares to 24 North Dakota investors for $1 per share. Several persons purchased fewer than 5,000 shares, shares were offered and sold before the Commissioner approved the exemption, and not all of the money was used to purchase NoDak's assets or working capital. In July 1993, Saunders' attorney told several of the plaintiffs about the security law violations during a meeting. Eventually, in August 1995, the Commissioner entered into a consent agreement with Faxx and its officers and directors, agreeing that no charges would be filed and its investigation would be closed.

[¶ 6] Meanwhile, during the acquisition negotiations, Saunders suggested that Faxx acquire Dakco and all of its subsidiaries. On June 26, 1992, Faxx and Dakco entered into a statement of intent for Faxx to purchase Dakco for more than $6,000,000. Although the purchase was scheduled to close on September 1, 1992, Faxx and Dakco spent the

1. The plaintiffs do not appeal from that part of the summary judgment awarding them a $274,315.54 default judgment against separate defendants Faxx Foods, Inc., Richard A. Olsen, and Roger W. Sweet.

2. The Kings and DeRoche were collectively referred to in the trial court proceedings as the "King defendants." Although Schmidt invested money in Faxx, he was not a director or officer of Faxx. Ramsay was an original investor in Faxx and sat on its board of directors. All of the defendants were Faxx shareholders. For purposes of this appeal, it is unnecessary to separately identify the Kings and DeRoche as the "King defendants."

next year in negotiations and preparations for the acquisition. However, in July 1993, Saunders informed Faxx he would no longer complete the deal because Faxx failed to provide written proof it had firm financial commitments to close on the purchase of Dakco. The Faxx–Dakco transaction was never consummated.

[¶ 7] Olsen wrote to Faxx shareholders on August 20, 1993, advising them about Dakco developments. Olsen enclosed with the letter a rescission offer and acceptance form regarding the shareholders' investments in Faxx. Shareholders were given the option of either rejecting the rescission offer and remaining Faxx shareholders, or accepting the rescission offer and requesting return of their investments. The letter asked shareholders to "please review all of the enclosed material and discuss it with your advisors before making your decision," and further warned them in underscored letters "IF YOU DO NOT RESPOND WITHIN 30 DAYS OF RECEIVING THIS MATERIAL, YOU WILL HAVE BEEN DEEMED TO HAVE REJECTED THIS RE[S]CIS[S]ION OFFER FOR LEGAL PURPOSES, AND YOU WILL REMAIN AN INVESTOR IN FAXX FOODS, INC." All of the plaintiffs claim they timely accepted this offer except Spelhaug, who said he did not receive it.

[¶ 8] On October 6, 1993, Olsen wrote to Faxx shareholders informing them "Faxx is placing on hold its recently announced re[s]cis[s]ion offer." The letter advised shareholders there was a "recent development" that might affect their decision to rescind and Faxx's decision to put the rescission offer on hold "in no way impairs your rights regarding the ultimate disposition of this re[s]cis[s]ion offer." The letter continued, "[w]hen we are able to conclude definitive parameters around the recent development, they will be explained to you fully. At that time Faxx will initiate a new re[s]cis[s]ion offer for your consideration."

[¶ 9] On January 14, 1994, Olsen sent Faxx shareholders a letter "to re-open the re[s]cis[s]ion offer...." The letter explained, although the capital necessary for Faxx to buy Dakco had "seemed well within the range of possibilities," "Faxx expended all of the equity that it had raised during the investment period on professional fees, bank fees, and other costs associated with the acquisition." Faxx offered 40 percent of each shareholder's investment to be paid back to them in Dakco stock valued at $11.15 per share. If shareholders accepted this offer, they would be required to surrender their Faxx stock and the rescission offer "would be in full and complete settlement of this matter." The plaintiffs took no action on this offer.

[¶ 10] On February 8, 1994, Narum wrote a memorandum to "Dakco Employees/Faxx Investors" to "determine our course of action." Narum asked for the opinions of other shareholders because they "have possible actions both against a corporation as well as against individuals according to the Century Code." All of the other plaintiffs except Hove received the memorandum.

[¶ 11] On February 16, 1994, Faxx's attorney wrote a letter to North Dakota Faxx investors withdrawing the second rescission offer because it did not propose a full return of investment as required by N.D.C.C. § 10–04–17(2). The letter informed investors Faxx's officers were "studying the situation and are attempting to find a resolution that would return as much value to you investors as possible." Faxx's attorney cautioned, however, "I suggest that each of you consult with your own attorneys to assist you in making decisions in regard to this matter, including the protection of your legal rights as investors in the company."

[¶ 12] In April 1994, Faxx sued Saunders and Dakco in a Minnesota federal district court seeking $1,000,000 for breach of an agreement to sell Dakco to Faxx. Faxx informed North Dakota investors about this litigation in June 1994. The federal district court dismissed Faxx's lawsuit, concluding no enforceable agreement had been formed for Faxx's acquisition of Dakco. Faxx appealed to the Eighth Circuit Court of Appeals, which affirmed the decision on June 16, 1995.

[¶ 13] The plaintiffs brought this lawsuit in August 1995 alleging violations of the Securities Act and actual fraud, and seeking $187,000 reimbursement for their stock purchases

plus interest. Faxx, Olsen and Sweet did not answer the complaint and a default judgment was entered against them for $274,315.54. The other defendants answered and asserted the plaintiffs' action was barred by the one-year time limitation under N.D.C.C. § 10–04–17(1), and the actual fraud claim was derivative of the plaintiffs' securities law claim and was unsupported by any evidence. The plaintiffs argued the one-year time limitation does not apply in this case and, if it does, the defendants should be estopped from claiming its benefit. The plaintiffs also moved to amend their complaint to include an allegation of constructive fraud. The trial court granted summary judgment in the defendants' favor, concluding the plaintiffs' action is time barred. The court also denied the plaintiffs' motion to amend the complaint.

## II

[¶ 14] On appeal the plaintiffs do not challenge the trial court's dismissal of their actual fraud claim, but assert the court erred in dismissing their securities law claim and in denying their motion to amend the complaint.

[¶ 15] Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving the factual disputes would not alter the results. *Ohio Cas. Ins. Co. v. Horner*, 1998 ND 168, ¶ 9, 583 N.W.2d 804. On appeal, we review the evidence in the light most favorable to the party opposing the summary judgment motion. *Freed v. Unruh*, 1998 ND 34, ¶ 6, 575 N.W.2d 433.

### A

[¶ 16] If corporate securities are sold in violation of the Securities Act, the corporate directors may incur liability to the purchasers of the securities, irrespective of the care and diligence they exercised, if they participated or aided in any way in making the illegal sales. *See Schollmeyer v. Saxowsky*, 211 N.W.2d 377, 386 (N.D.1973); *Weidner v. Engelhart*, 176 N.W.2d 509, 518 (N.D. 1970). The statutory civil remedy for violating North Dakota securities laws and regulations is set forth in N.D.C.C. § 10–04–17:

*Remedies.* Every sale or contract for sale made in violation of any of the provisions of this chapter, or of any rule or order issued by the commissioner under any provisions of this chapter, shall be voidable at the election of the purchaser. The person making such sale or contract for sale, and every director, officer, salesman, or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser who may sue either at law or in equity to recover the full amount paid by such purchaser, together with all taxable court costs, interest as provided in subsection 2, and reasonable attorney's fees, less the amount of any income received on the securities, upon tender to the seller, in person or in open court, of the securities sold or of the contracts made, or for damages if he no longer owns the securities. Damages are the amount that would be recoverable upon a tender less the value of the securities when the purchaser disposed of them and interest as provided in subsection 2 from the date of disposition. Provided:

1. That no action shall be brought under this section for the recovery of the purchase price after five years from the date of such sale or contract for sale nor more than one year after the purchaser has received information as to matter or matters upon which the proposed recovery is based; and

2. That no purchaser shall claim or have the benefit of this section if he shall have refused or failed to accept, within thirty days from the date of such offer, an offer in writing of the seller to take back the securities in question and to refund the full amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, . . .

3. Nothing in this chapter shall limit any statutory or common-law right of

any person in any court for any act involved in the sale of securities.[3]

[¶ 17] The trial court ruled the plaintiffs' action was barred by the one-year limitation in N.D.C.C. § 10–04–17(1). The court reasoned the February 16, 1994 letter to investors from Faxx's attorney notifying them the second offer to rescind was withdrawn, the company was considering bankruptcy, and the investors should consult their own attorneys to protect their legal rights was "a pretty clear indication that the jig [wa]s up. The Plaintiffs were on notice that it was time to do something to protect themselves." The plaintiffs concede they had knowledge by February 1994 that would lead them to believe Faxx had violated the securities laws and more than one year passed before they commenced this action in August 1995. They assert, however, the one-year time bar in subsection 1 is inapplicable whenever the seller makes an offer under subsection 2 to take back the securities and refund the purchase price.

[¶ 18] This issue involves the interpretation of a statute, a question of law fully reviewable by this Court. *Goodleft v. Gullickson,* 556 N.W.2d 303, 306 (N.D.1996). The primary objective of statutory construction is to ascertain the intent of the Legislature. *Jones v. Pringle & Herigstad, P.C.,* 546 N.W.2d 837, 840 (N.D.1996). We look first in ascertaining legislative intent at the words used in the statute, giving the words their ordinary, plain language meaning. *Shiek v. North Dakota Workers Compensation Bureau,* 1998 ND 139, ¶ 16, 582 N.W.2d 639. Statutes must be construed as a whole to determine the legislative intent and the intent must be derived from the whole statute. *State v. Johnson,* 1997 ND 235, ¶ 8, 571 N.W.2d 372. We interpret statutes to avoid absurd or ludicrous results. *Ohnstad Twichell, P.C. v. Treitline,* 1998 ND 10, ¶ 20, 574 N.W.2d 194.

[¶ 19] The plaintiffs argue both the one-year limitation under subsection 1 and the 30–day limitation under subsection 2 do not apply to the same voidable sale, but are mutually exclusive limitations. Under the plaintiffs' construction of the statute, either the seller does nothing and the purchaser becomes barred by failing to bring an action in one year, or the seller offers to rescind and refund the purchase price and the purchaser becomes barred from a remedy unless the purchaser accepts the offer in 30 days. Here, the plaintiffs contend Faxx elected to offer rescission under subsection 2, and because the plaintiffs timely accepted the offer within 30 days, there was no need to bring suit within one year of obtaining knowledge of Faxx's problems to have their stock purchases declared void. We reject the plaintiffs' interpretation of the statute.

[¶ 20] Subsections 1 and 2 of the statute are separated by the term "and." Unlike the term "or," which is disjunctive in nature and ordinarily indicates an alternative between different things or actions, *see State v. Eldred,* 1997 ND 112, ¶ 21, 564 N.W.2d 283; *State v. Silseth,* 399 N.W.2d 868, 870 (N.D.1987), the term "and" is conjunctive in nature and ordinarily means in addition to. *See City of LaMoure v. State Health Council,* 213 N.W.2d 869, 873 (N.D.1973); *McCaull–Webster Elevator Co. v. Adams,* 39 N.D. 259, 266, 167 N.W. 330, 332 (1918). The use of the term "and" strongly suggests the Legislature intended a potential plaintiff must avoid the limitations in both subsections 1 and 2 to successfully use the statutory civil remedy.

[¶ 21] Moreover, the plaintiffs' argument would lead to a highly unusual and unintended result. The public policy behind statutes of limitation is to prevent the litigation of stale claims when, through the lapse of time, evidence regarding the claim has become difficult to procure or even lost entirely. *See Erickson v. Scotsman, Inc.,* 456 N.W.2d 535, 537 (N.D.1990). Under the plaintiffs' construction of the statute, if a seller made a rescission offer which was ac-

---

3. Effective August 1, 1995, N.D.C.C. § 10–04–17(1) was amended to delete the one-year limitation period and to provide for a five-year limitation period from the date "that the aggrieved party knew or reasonably should have known about the facts that are the basis for the alleged violation." *See* 1995 N.D. Sess. Laws ch. 100, § 6. The plaintiffs do not dispute that the pre-August 1, 1995 one-year limitation period applies to this case.

cepted and later withdrawn, there would be no limitation period for the purchaser who accepted the offer to bring an action to recover under N.D.C.C. § 10–04–17. In effect, the Legislature would have created an action for which there is no limitation period. If the Legislature intended to permit purchasers who received rescission offers to bring an action at any time, it could have included language to that· effect. The statute, when its parts are read together in a reasonable manner, does not allow plaintiffs an unlimited amount of time to bring suit.

[¶ 22] Subsection 1, which emphasizes "no action shall be brought," establishes a clear limitation period. Subsection 2 additionally precludes a plaintiff from bringing suit if the plaintiff fails to timely accept a rescission offer. Thus, a claim may not be pursued even if commenced within the limitation period if a proper rescission offer was earlier declined. We conclude the trial court correctly rejected the plaintiffs' construction of the statute in concluding the one-year time bar was applicable in this case.

### B

[¶ 23] The plaintiffs assert the trial court erred in ruling the defendants were not equitably estopped from relying on the one-year time limitation.

[¶ 24] The doctrine of equitable estoppel may operate to preclude application of a statute of limitations as a defense by one whose actions mislead another, thereby inducing that person to not file a claim within the statute of limitations. *Szarkowski v. Reliance Ins. Co.*, 404 N.W.2d 502, 507 (N.D. 1987). A delay may be excusable if it is not unreasonably protracted, but is induced by the defendant's promises, suggestions, or assurances which, if carried into effect, would result in a solution or adjustment without litigation. *Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125, 129 (N.D.1990). To successfully implement the doctrine of equitable estoppel under N.D.C.C. § 31–11–06, the plaintiff must carry the burden of proving three elements:

First, the plaintiff must prove that the defendant made statements and "from the nature of defendant's statements and all of the surrounding facts and circumstances that the statements were made with the idea that plaintiff would rely thereon." . . . Second, the "plaintiff must show that she relied on the representations or acts of defendant and, as a result of that reliance, she failed to commence the action within the prescribed period." . . . Lastly, "the plaintiff must show that the acts of defendant giving rise to the assertion of estoppel must have occurred before the expiration of the limitation period."

*Burr v. Trinity Medical Center*, 492 N.W.2d 904, 908 (N.D.1992) (internal citations and footnote omitted). A plaintiff's reliance on the defendant's conduct must be reasonable, and there must be some form of affirmative deception on the part of the defendant. *Matter of Helling*, 510 N.W.2d 595, 597 (N.D. 1994).

[¶ 25] Relying on the fiduciary duty officers and directors of a corporation owe to its shareholders, *see Production Credit Ass'n of Fargo v. Ista*, 451 N.W.2d 118, 121 (N.D. 1990), the plaintiffs assert less than one year elapsed from the date Faxx first informed them of the security law violations and the date Faxx brought the federal lawsuit against Dakco and Saunders, which was not finally resolved until the Eighth Circuit Court of Appeals affirmed the dismissal 438 days later on June 16, 1995. They argue this suit was promptly filed 46 days after learning the appeal was lost and Faxx would not have the funds to repay them. The plaintiffs argue Faxx's first offer to rescind on August 20, 1993, was not made in good faith, and all actions taken afterward were designed to deceitfully lull them into a false sense of security that they would be repaid and they would have no need to sue. We agree with the trial court there is no evidence to support the plaintiffs' estoppel argument.

[¶ 26] The undisputed evidence shows both rescission offers were withdrawn more than one year before the plaintiffs brought this action.[4] When the second re-

---

4. Although the plaintiffs assert they timely ac-

cepted the first rescission offer before it was

scission offer was withdrawn in February 1994, Faxx's attorney specifically advised the plaintiffs to consult with other attorneys to protect their legal rights. Although Faxx informed the plaintiffs of its federal lawsuit against Dakco and Saunders, we do not believe this action, alone, is sufficient to invoke the doctrine of equitable estoppel. *See, e.g., Anisfeld v. Cantor Fitzgerald & Co., Inc.*, 631 F.Supp. 1461, 1466 (S.D.N.Y.1986). Reliance solely on knowledge of a lawsuit against third parties is not reasonable because a successful outcome is never a certainty. Here, the information conveyed to investors about the Faxx lawsuit was not false or misleading in any way, and there is no allegation Faxx told the plaintiffs to delay bringing suit until that litigation was resolved. In *Schmidt*, 460 N.W.2d at 130 (internal citation omitted), we said:

> "[A] plaintiff may not invoke the doctrine of equitable estoppel against a defendant unless the plaintiff exercises due diligence in commencing the appropriate legal proceeding after the circumstances giving rise to estoppel have ceased to be operational, that is, after plaintiff has notice, actual or constructive, that he must resort to legal recourse and may no longer rely upon agreements, promises, representations to the contrary, or conduct or deceptive practices which may have lulled them into a sense of security."

[¶ 27] We agree with the trial court that, as a matter of law, the plaintiffs had notice of potential Securities Act claims no later than February 1994 when the second rescission offer was withdrawn. The actions by the defendants after that date cannot reasonably be construed as equitably estopping them from relying on the one-year limitation period. The trial court correctly concluded principles of equitable estoppel do not apply in this case.

## C

[¶ 28] The plaintiffs contend the trial court erred in denying the motion to amend their complaint to assert a claim of constructive fraud against the defendants. The trial court ruled the proposed amendment "incorporate[d the plaintiffs'] argument that the defendants are estopped from utilizing the statute of limitations," and because the court ruled estoppel did not apply, denied the motion.

[¶ 29] A trial court has discretion to grant or deny amendments to pleadings under N.D.R.Civ.P. 15(a), and we will not reverse the trial court's decision absent an abuse of that discretion. *Messiha v. State*, 1998 ND 149, ¶ 7, 583 N.W.2d 385. A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, *see Hansen v. First Am. Bank & Trust*, 452 N.W.2d 770, 772 (N.D.1990), or when its decision is not the product of a rational mental process leading to a reasoned determination. *See Frafjord v. Ell*, 1997 ND 16, ¶ 5, 558 N.W.2d 848. Here, the plaintiffs' proposed constructive fraud claim is based on facts virtually identical to the facts relied upon to assert equitable estoppel. They assert no separate claim for damages. Under these circumstances, we conclude the trial court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint.

## III

[¶ 30] Our resolution of this case renders it unnecessary to address the other issues raised by the parties. The summary judgment is affirmed.

[¶ 31] SANDSTROM, NEUMANN, MARING and KAPSNER, JJ., concur.

---

withdrawn, their proper remedy under these circumstances would be a breach of contract action against Faxx or its principals for violation of that rescission agreement. The complaint makes no claim of breach of contract.