2007 ND 141

**SUPERIOR, INC., Plaintiff and Appellant,**

v.

**BEHLEN MFG. CO., Defendant and Appellee.**

**No. 20060308.**

Supreme Court of North Dakota.

Aug. 24, 2007.

Robert G. Manly, Vogel Law Firm, Moorhead, MN, for plaintiff and appellant.

Allen J. Flaten, Zimney Foster P.C., Grand Forks, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Superior, Inc. ("Superior") appealed from summary judgment dismissing its action against Behlen Manufacturing Co. ("Behlen"). Superior argues the district court erroneously concluded that its claim was time barred by the four-year statute of limitations governing contracts for the sale of goods. Superior also contends the district court erred when it failed to apply the doctrines of equitable estoppel and equitable tolling, and when it held that Superior did not have a negligence claim against Behlen. We affirm.

I

[¶ 2] Superior is in the business of building grain bins. In 2001, Superior contracted to erect a grain bin for Oklee Farmers Elevator in Minnesota. On August 24, 2001, Superior submitted a purchase order requesting 5,300 "3/8″ × 7/8″ Grade 5 Bin Bolts" from Behlen. Behlen shipped 5,300 bolts, which Superior received sometime between August 24 and September 3. Behlen also sent an invoice describing the bolts as "BOLT HEX HEAD W/W 3/8 × 7/8." The invoice did not specifically state the grade of the bolts. Superior used the bolts to assemble a grain bin for Oklee Elevator on September 3 through September 5, 2001. More than two years later, in early December 2003, the grain bin collapsed and about fifty thousand bushels of wheat spilled onto the ground. Superior built Oklee Elevator a new grain bin at no cost to the elevator and paid $12,226 to cover losses resulting from damaged wheat, cleanup costs, and lack of availability of the elevator.

[¶ 3] After inspecting the collapsed bin, Superior determined the collapse resulted from the use of grade two bolts. In mid-December 2003, Superior notified Behlen about the collapsed bin and claimed that Behlen was at fault for supplying grade two bolts rather than grade five bolts as the purchase order requested. Superior claimed it was not aware the bolts were nonconforming until the bin collapsed. Superior eventually retained counsel to negotiate with Behlen. On April 13, 2004, Behlen sent a letter to Superior's counsel denying liability for the collapse. In that letter, Behlen stated that grade five bolts are clearly marked on the bolt head, and that apparently nobody from Superior noticed the bolts did not have grade five markings. In a letter dated April 19, 2004, Superior responded that it was willing to attempt to resolve the matter without litigation. On April 30, 2004, Behlen's insurance company contacted Superior by letter about the cause of the bin collapse. In that letter, the insurance company stated:

> In reviewing the correspondence which has been exchanged between your office and our insured, there seems to be a difference of opinion as to the proximate cause of the bin collapse. It seems that the best evidence in a case like this would be an engineer's report following an inspection of the bin in question. It would be appreciated if you would let me know if the bin has been inspected by an engineer, and if so, then please favor us with a copy of that report.

Superior arranged to have an engineer inspect the collapsed bin. The inspection occurred on September 28, 2004, and the engineer provided Superior with his report on the collapse on March 9, 2005. From June 2005 through October 2005, the parties made settlement offers and counteroffers, but never came to an agreement about resolving the dispute.

[¶ 4] On March 9, 2006, Superior served Behlen with a summons and complaint alleging that Behlen improperly supplied grade two bolts, which resulted in the grain bin collapse. Superior sought $45,736.06 in damages for losses it incurred in rebuilding the grain bin and compensating Oklee Elevator for losses related to the bin collapse. Behlen moved for summary judgment, arguing that Superior's claim was barred by the four-year statute of limitations governing contracts for the sale of goods. Superior contended that its claim was for indemnity from Behlen and thus was governed by more general six-year statute of limitations for actions upon a contract, obligation, or liability.

[¶ 5] The district court granted summary judgment for Behlen holding that the four-year statute of limitations applied to Superior's claim because the claim arose from a contract for the sale of goods. The district court concluded Superior's claim was time barred because the summons and complaint were served more than four years after Behlen delivered the bolts. The district court also rejected Superior's arguments for the application of equitable tolling and equitable estoppel, and held that Superior did not have a negligence claim against Behlen.

## II

[¶ 6] Summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Hasper v. Center Mut. Ins. Co.*, 2006 ND 220, ¶ 5, 723 N.W.2d 409. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Trinity Hospi-*

*tals v. Mattson*, 2006 ND 231, ¶ 10, 723 N.W.2d 684. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. *Id.* In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. *Hasper*, at ¶ 5.

### III

[¶ 7] Superior argues its claim against Behlen is for indemnity, not for breach of the sales contract, and therefore the six-year statute of limitations contained in N.D.C.C. § 28–01–16 should apply.

[¶ 8] Section 28–01–16(1) provides, "The following actions must be commenced within six years after the claim for relief has accrued: 1. An action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28–01–15 and 41–02–104."

[¶ 9] On the other hand, Behlen contends the four-year statute of limitations contained in N.D.C.C. § 41–02–104, which is part of our codification of the Uniform Commercial Code, should apply because the claim arises out of a contract for the sale of goods. Section 41–02–104 provides, in relevant part:

1. An action for breach of any contract for sale must be commenced within four years after the claim for relief has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

2. A claim for relief accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the claim for relief accrues when the breach is or should have been discovered.

[¶ 10] "An action does not become an action for indemnity merely because the pleader has so denominated it." *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 350 (2d Cir. 1986) (internal quotation omitted). Thus, we examine whether Superior's claim against Behlen is an indemnity claim or a breach of contract claim.

[¶ 11] Indemnity is an equitable remedy which permits a party to recover reimbursement from another for the discharge of a liability that, as between the two parties, should have been discharged by the other. *Grinnell Mut. Reins. Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 40, 658 N.W.2d 363. "An indemnity action is of a separate and distinct nature from the tort or contract action which underlies it." 42 C.J.S. *Indemnity* § 2, at 98 (2007). Because indemnity is an equitable doctrine, it is not amenable to hard and fast rules. *Mann v. Zabolotny*, 2000 ND 160, ¶ 7, 615 N.W.2d 526. The application of indemnity must turn on the facts of each case. 42 C.J.S. *Indemnity* § 2, at 97.

[¶ 12] A right of indemnity may arise by express agreement or by implication. *Grinnell Mut. Reins. Co.*, 2003 ND 50, ¶ 40, 658 N.W.2d 363. In this case, neither Superior nor Behlen claims there was an express agreement to indemnify. Therefore, we consider whether Superior has an implied right of indemnification. Contract and tort are the two possible bases for implied indemnity. *Mann*, 2000 ND 160, ¶ 8, 615 N.W.2d 526. For purposes of this discussion, we focus

upon what has been called the "implied contract theory" of indemnity. *See id.* (citing *Goodpasture, Inc.,* 782 F.2d at 351).

[¶ 13] "Not every contract or contractual relationship will produce an implied indemnity." *Hanscome v. Perry,* 75 Md.App. 605, 542 A.2d 421, 426 (Md.Ct. App.1988). Rather, "[i]mplied contractual indemnity may arise either from a course of conduct, a special relationship, or unique factors indicating an intention to provide indemnity." 42 C.J.S. *Indemnity* § 33, at 147–48. Thus, courts have recognized that a contractual right to indemnification may be implied based on the special nature of the relationship between the parties, *see Goodpasture, Inc.,* 782 F.2d at 351; *Araujo v. Woods Hole,* 693 F.2d 1, 2–3 (1st Cir.1982); or when there are unique factors demonstrating that the parties intended the would-be indemnitor to bear the ultimate responsibility for a certain matter. *See Araujo,* at 2.

[¶ 14] In *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 347 (2d Cir.1986), the buyer, Yemen, and the seller, Goodpasture, entered into two contracts for the sale of grain. The grain was to be loaded aboard three ships owned by a third party, Muhammadi Steamship Company. *Id.* at 348. The ships arrived late for delivery, two of them more than a month after the scheduled delivery date, and one of the ships had to be fumigated twice before leaving port due to insect infestation. *Id.* Muhammadi sought and won an arbitration award against Yemen seeking costs for deadfreight, detention, and fumigation. *Id.* at 349. Yemen then filed a complaint against Goodpasture seeking reimbursement for the costs it had been required to pay Muhammadi. *Id.*

[¶ 15] The Second Circuit held there was no basis for finding an implied right of indemnification running from Goodpasture

to Yemen. *Id.* at 351. The court concluded that Yemen's claims amounted to nothing more than claims for consequential damages resulting from Goodpasture's alleged breach of the grain sales contracts. *Id.* at 347, 351–52. In reaching this result, the court reasoned:

> In the present case there is nothing special about the contractual relationship between Goodpasture and Yemen that would warrant implying in fact a contract for indemnification. Their grain sale agreements were fairly ordinary commodities contracts. There simply is nothing in them or in the parties' dealings from which an agreement to indemnify could "fairly be implied". If an implied contract for indemnification were to be found here, one would have to be found in nearly every commodities sale contract that lacked a clause excluding it, a result that would reverse all standard contract and indemnity law. We therefore conclude there could be no implied contract for indemnity in this case.

*Id.* at 351 (citations omitted).

[¶ 16] We are persuaded by the rationale of the *Goodpasture* court. In this case, Superior and Behlen entered into a contract for the sale of bolts. Behlen allegedly breached this sales contract by delivering nonconforming grade two bolts. Superior used these nonconforming bolts to build a grain bin for a third party, which collapsed and resulted in damages. Superior argues that its claim against Behlen is for indemnity, not for breach of a sales contract. However, Superior does not point to any facts which would indicate a special relationship between the parties giving rise to a right of implied indemnity. Nor has Superior shown any unique or special factors indicating that Superior and Behlen intended Behlen to be ultimately liable.

[¶ 17] We recognize that some courts have found a right of implied indemnity may arise "where one party's breach of contract causes a second party to breach a separate contract with a third party." *Carrillo v. Jam Prods., Ltd.*, 173 Ill.App.3d 693, 123 Ill.Dec. 326, 527 N.E.2d 964, 967 (1988); *see also Considine Co. v. Shadle, Hunt & Hagar*, 187 Cal.App.3d 760, 232 Cal.Rptr. 250, 256 (1986). However, because implied contractual indemnity is an equitable remedy, it cannot be mechanically applied in every case involving a breach of contract where the non-breaching party becomes liable to a third party. It is well-settled that "the touchstone for equity is the lack of an adequate legal remedy." 30A C.J.S. *Equity* § 17, at 222 (2007); *see also Farmers Nat'l Bank v. Wickham Pipeline Constr.*, 114 Idaho 565, 759 P.2d 71, 74 (1988) (citation omitted) (stating that "[r]elief in equity will never be available to secure the same judgment that could be obtained at law").

[¶ 18] Here, Superior had an adequate legal remedy to recover from Behlen the damages it paid to Oklee Elevator as a result of the grain bin collapse. Superior and Behlen entered into a contract for the sale of bolts, which was a transaction for the sale of goods governed by N.D.C.C. ch. 41–02, our enactment of the Uniform Commercial Code sales article. *See* N.D.C.C. § 41–02–02 (stating that "this chapter applies to transactions in goods"); N.D.C.C. § 41–02–05 (defining "goods"). Chapter 41–02 provides multiple remedies for the buyer in the event of the seller's breach.

[¶ 19] Under N.D.C.C. § 41–02–93, the buyer may recover damages from the seller for breach of warranty when goods are accepted but later are discovered to be nonconforming. *See Leininger v. Sola*, 314 N.W.2d 39, 45 (N.D.1981). As part of this measure of damages, the buyer may seek incidental and consequential damages under N.D.C.C. § 41–02–94. Section 41–02–94 provides, in relevant part:

2. Consequential damages resulting from the seller's breach include:

a. Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

b. Injury to person or property proximately resulting from any breach of warranty.

In *Hofmann v. Stoller*, 320 N.W.2d 786, 792 (N.D.1982) (quoting *Petroleo Brasileiro, S.A., Petro. v. Ameropan Oil Corp.*, 372 F.Supp. 503, 508 (E.D.N.Y.1974)), we noted the difference between incidental and consequential damages:

While the distinction between the two is not an obvious one, the Code makes plain that incidental damages are normally incurred when a buyer (or seller) repudiates the contract or wrongfully rejects the goods, causing the other to incur such expenses as transporting, storing, or reselling the goods. On the other hand, consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.

Thus, the buyer may seek consequential damages from the seller when it incurs liability to a third party as a result of the use or resale of the seller's product. *See* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 10–4, at 726 (5th ed.2006).

[¶ 20]   We conclude Superior does not have an implied indemnity claim against Behlen.   Superior has not shown any special circumstances in the relationship of the parties which would give rise to a right of implied indemnification against Behlen. Furthermore, Superior had an adequate remedy at law under N.D.C.C. § 41–02–94, which permits the buyer to seek consequential damages in the event of the seller's breach.   Because Superior had an adequate remedy at law, it is not entitled to seek the equitable remedy of indemnification.

■■■■■■   [¶ 21]   Superior's claim is for breach of a sales contract, not for indemnity.   Therefore, we apply the four-year statute of limitations governing contracts for the sale of goods, not the more general six-year contract statute of limitations. Under N.D.C.C. § 41–02–104, an action for breach of a sales contract must be commenced within four years after the claim for relief has accrued.   In the case of a breach of warranty, the claim accrues when tender of delivery is made, unless the seller makes a warranty explicitly extending to the future performance of the goods.   No such explicit warranty was made in this case. *See* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–9, at 765 (5th ed.2006) (stating that "it should be clear that this extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods").   Thus, Superior's claim accrued upon tender of delivery.

[¶ 22]   The latest possible date on which Behlen tendered the bolts was September 3, 2001.   The four-year statute of limitations ran on September 3, 2005.   Superior commenced suit on March 9, 2006, approximately six months after the statute of limitations had run.   Therefore, the district court properly concluded that Superior's action against Behlen is time barred.

## IV

[¶ 23]   Superior claims that if the four-year statute of limitations applies, the doctrines of equitable estoppel and equitable tolling preclude Behlen's statute of limitations defense.

## A

■■■■■■   [¶ 24]   The doctrine of equitable estoppel may preclude application of the statute of limitations as a defense by one whose actions misled another, thereby inducing that person not to file a claim within the statutory period. *Muhammed v. Welch,* 2004 ND 46, ¶ 18, 675 N.W.2d 402.   A delay may be excusable if it is not unreasonably protracted, but is induced by the defendant's promises, suggestions, or assurances which, if carried into effect, would result in a solution or adjustment without litigation. *Narum v. Faxx Foods, Inc.,* 1999 ND 45, ¶ 24, 590 N.W.2d 454.

■■■■■■   [¶ 25]   In order to successfully implement the doctrine of equitable estoppel, the plaintiff must carry the burden of proving three elements: (1) the defendant made statements intending that plaintiff would rely on them;   (2) the plaintiff in fact relied on the defendant's representations, and as a result failed to commence the action within the limitation period; and (3) the defendant's statements were made prior to the expiration of the limitation period. *Hoffner v. Johnson,* 2003 ND 79, ¶ 26, 660 N.W.2d 909.   A plaintiff's reliance on the defendant's conduct must be reasonable, and there must be some form of affirmative deception on the part of the defendant. *Narum,* 1999 ND 45, ¶ 24, 590 N.W.2d 454.   The mere conduct of settlement negotiations or discussions by a defendant with a plaintiff does not alone provide a basis for estopping the defen-

dant from pleading the statute of limitations. *Muhammed,* 2004 ND 46, ¶ 18, 675 N.W.2d 402 (citations omitted).

[¶ 26] Here, Superior points to the letter from Behlen's insurance company dated April 30, 2004, in support of its claim for equitable estoppel. Superior argues that it delayed in filing a lawsuit because Behlen strongly implied that settlement would occur after Superior obtained an engineer's report about the cause of the grain bin collapse. However, the letter from Behlen's insurer simply noted that there was a difference of opinion about causation and stated that an engineer's report would be the "best evidence in a case like this." The letter stated, "It would be appreciated if you would let me know if the bin has been inspected by an engineer, and if so, then please favor us with a copy of that report."

[¶ 27] We cannot find any statements in this letter, or any other correspondence between the parties, which would reasonably have led Superior to believe that a settlement would occur after an engineer's report was obtained. In the letter dated April 30, 2004, Behlen asked for a copy of an engineer's report if one existed. It did not demand that Superior obtain an engineer's report, and it did not make any representations that settlement would follow such a report. Furthermore, the report was provided in March 2005, some nearly six months before the statute of limitations had run. We agree with the district court's conclusion that the correspondence between Superior and Behlen amounted to nothing more than settlement negotiations. Therefore, the district court did not err when it held that Behlen's statute of limitations defense was not barred by the doctrine of equitable estoppel.

B

[¶ 28] This Court has never adopted the doctrine of equitable tolling, *see Riemers v. Omdahl,* 2004 ND 188, ¶ 21, 687 N.W.2d 445, and we decline Superior's invitation to adopt it in this case. In any event equitable tolling would not apply to Superior's claim. The equitable tolling doctrine operates to protect the claim of a plaintiff who has several legal remedies and pursues one of the remedies reasonably and in good faith, thereby tolling the limitation for the other remedies. *Id.* at ¶ 22 (quotation omitted). The record contains no indication that Superior failed to file its action against Behlen because it was timely pursuing other available legal remedies. Thus, Superior cannot successfully assert the doctrine of equitable tolling in this case.

V

[¶ 29] Superior contends the district court erroneously held it did not have a negligence claim against Behlen for improperly supplying grade two bolts, rather than the grade five bolts requested in Superior's purchase order.

[¶ 30] In *Dakota Grain Co. v. Ehrmantrout,* 502 N.W.2d 234, 236–37 (N.D.1993), we explained the difference between a breach of warranty action arising under a sales contract and a negligence action. The seller's negligence, or lack of negligence, is not relevant to the question of whether the seller breached his or her express warranty to deliver conforming goods. *Id.* at 236. A mere breach of contract does not, by itself, furnish a basis for tort liability grounded in negligence. *Id.* Conduct which constitutes a breach of contract does not subject the actor to an action for negligence, unless the conduct also constitutes a breach of an independent duty that did not arise from the contract. *Id.* at 236–37; *see also Olander Contract-*

*ing Co. v. Gail Wachter Investments*, 2002 ND 65, ¶ 26, 643 N.W.2d 29.

[¶ 31] Here, Superior and Behlen entered into a contract for the sale of bolts. Apart from this sales contract, Behlen owed no independent duty to Superior. Therefore, the district court properly held that Superior did not have a negligence claim against Behlen.

## VI

[¶ 32] We affirm the summary judgment dismissing Superior's action.

[¶ 33] SONNA M. ANDERSON, D.J., and DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

[¶ 34] The Honorable SONNA M. ANDERSON, D.J., sitting in place of KAPSNER, J., disqualified.